**GOLDEN EAGLE DISTRIBUTING CORPORATION, Plaintiff,**

v.

**BURROUGHS CORPORATION, Defendant.**

**No. C–84–0523–WWS.**

United States District Court, N.D. California.

Sept. 19, 1984.

Jeffrey A. Miller, Perez McNabby & Cook, Orinda, Cal., for plaintiff.

Stephen G. Schrey, Eugene K. Yamamoto, Crosby, Heafey, Roach & May, Oakland, Cal., Steven D. McCormick, Robert J. Kopecky, Kirkland & Ellis, Chicago, Ill., for defendant.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

Plaintiff brought this action in Minnesota state court for fraud, negligence, and breach of contract against Burroughs Corporation, the manufacturer of an allegedly defective computer system sold to plaintiff. Defendant removed to federal court in Minnesota on the basis of diversity of citizenship, and that court, on defendant's motion, transferred the action to this Court pursuant to 28 U.S.C. § 1404(a). Defendant then moved for summary judgment on the ground that all four claims are time-barred under California law. While conceding that the breach of contract claim is time-barred by the terms of the sales agreement, plaintiff argued that the limitations period for the remaining claims was governed by Minnesota law under which they would not be time-barred. Defendant also moved to dismiss plaintiff's claim for economic loss arising from negligent manufacture as being barred by California law.

■ At the hearing on defendant's motion, the Court denied it for lack of merit and directed counsel for defendant responsible for the filing of the motion[1] to submit a memorandum explaining why sanctions should not be imposed under Rule 11.

### The Statute of Limitations Issue

Counsel for defendant have submitted an excellent brief in defense of their position.

---

1. At the hearing, an associate of the Chicago firm of Kirkland & Ellis acknowledged responsibility for the preparation of the motion although it was signed by local counsel. One reason for requiring the association of an attorney who is a member of the bar of this court (see Local Rule 110–2(a)) is to assure that standards of professional conduct will be met. (See Local Rule 110–3) Accordingly local counsel has an obligation to satisfy himself before signing a paper that it complies with applicable requirements. However, in the absence of an indication of active participation in the preparation or decision to file a paper by local counsel—of which there is none here—it does not seem appropriate to subject them to sanctions other than criticism for their apparent neglect.

It articulates the argument they sought to present in support of their motion with exemplary clarity and fairness. The difficulty is that this is not the argument presented when the motion was made. Had it been made then, there would be no question that it would have qualified under Rule 11 as "a good faith argument for the extension ... of existing law" and the issue of sanctions would never have arisen. Instead of doing what they have now done, counsel presented an argument calculated to lead the Court to believe that it was "warranted by existing law." Nothing demonstrates the point more clearly than a comparison of the key portions of the argument made in the memorandum in support of the motion with those in the memorandum in opposition to Rule 11 sanctions.[2] Counsel's argument was two-pronged. The first prong was that a Minnesota court would have dismissed the action under the doctrine of forum non conveniens. The second was that a federal court, following a change of venue, would not have applied the longer Minnesota statute to plaintiff's claims because Minnesota would not have done so.

Minnesota Law Argument

### Opening Memorandum

The doctrine of *forum non conveniens* is well settled in Minnesota and was recently reaffirmed by the Minnesota Supreme Court in *Bongards' Creameries v. Alfa-Laval, Inc.,* 339 N.W.2d 561 (Minn.1983)

&ast; &ast; &ast;

The Minnesota courts have repeatedly applied the doctrine of *forum non conveniens* to dismiss claims of nonresident plaintiffs in circumstances strikingly similar to those in this case.

All of these [relevant] factors are equally present here, and it would have been an abuse of discretion for a Minnesota trial court not to dismiss Golden Eagle's Complaint.

&ast; &ast; &ast;

Because this action would have been dismissed by a Minnesota state court, application of the Minnesota statute of limitations by a federal court would violate the *Erie* doctrine of uniformity between state and federal rules of decision in diversity cases. *See, Van Dusen v. Barrack, supra,* 376 U.S. 612, 638-639 [84 S.Ct. 805, 820-821, 11 L.Ed.2d 945 (1964)].

&ast; &ast; &ast;

Here, Golden Eagle would not have had the benefit of the six-year Minnesota statute of limitations in Minnesota state court since its Complaint would have been dismissed. Thus, for this Court to apply the Minnesota limitation period would make the outcome differ from that in state court, contrary to *Erie.* For this reason, the exception noted in *Van Dusen* applies here, and Golden Eagle's Complaint must be dismissed for failure to comply with the three-year California statute of limitations.

### Rule 11 Memorandum

The premise of Burroughs' choice-of-law argument was that a Minnesota court would have dismissed the complaint under the Minnesota doctrine of *forum non conveniens.* There is precedent to support Burroughs' assertion that Minnesota courts apply this doctrine to claims like Golden Eagle's having no nexus with that state. *See, e.g., Bongards' Creameries v. Alfa-Laval, Inc.,* 339 N.W.2d 561 (Minn.1983); *Willoughby v. Hawkeye-Security Insurance Co.* [291 Minn. 509], 189 N.W.2d [165], 167 (1971). Even Golden Eagle did not dispute that a Minnesota court would ordinarily dismiss a complaint where, as here, (1) both parties are noncitizens of Minnesota, (2) none of the witnesses reside in Minnesota, (3) all documents and other sources of proof are outside Minnesota, (4) no part of the transaction was consummated in Minnesota, (5) no damages were suffered in Minnesota, and (6) the substantive law of another state governs the parties' dispute.

The unsettled question raised by this case is whether a Minnesota court would have refused to apply this doctrine to Golden Eagle's complaint solely because it would be time-barred if filed in other jurisdictions. As evidenced by the Minnesota cases cited in both parties' briefs, the Minnesota courts have not given a clear answer to this question. Thus, while no decision has expressly applied the doctrine under these precise circumstances, there are no cases in which a Minnesota court has refused to dismiss for this reason.

&ast; &ast; &ast;

Counsel recognizes that courts in other jurisdictions have hesitated or refused to dismiss on *forum non conveniens* grounds where a plaintiff's claim would be barred as a result. The relevant inquiry in this case, however, is what a *Minnesota* court would do applying the law and policy of the state of Minnesota. Given the vigor with which Minnesota has applied the *forum non conveniens* doctrine and the state's particular interest in avoiding inundation by unrelated transitory claims, it is plausible that a Minnesota court would have dismissed this complaint. [footnote omitted]

---

**2.** Counsel's reply memorandum, being essentially of the same tenor as the opening memorandum, will not be separately addressed here.

#### Opening Memorandum

Neither the Supreme Court nor the Ninth Circuit has ever held that a transferee court must apply the choice-of-law rules of a forum whose own courts would have refused to entertain the suit. The leading case on the law to be applied by the transferee court after a change of venue under Section 1404(a) is *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

In *Van Dusen*, the Supreme Court declined to state a *per se* rule requiring a transferee court to apply the original forum's choice-of-law rules under all circumstances. Although the Court held that in that case the transferee court should apply the state law that would have applied had there been no change of venue, the Court stated specifically that the original state's law would not necessarily apply "if it was contended that the transferor State would simply have dismissed the action on the ground of *forum non conveniens*." *Id.* at 640 [84 S.Ct. at 821]. This case falls squarely within the *forum non conveniens* exception noted by the Court in *Van Dusen*.

#### Rule 11 Memorandum

The second step in counsel's argument was that a federal court, following a change of venue, should not apply the choice-of-law rules of a state whose own courts would not have applied them to plaintiff's claim. This is an issue of first impression in this circuit. The Supreme Court in *Van Dusen* expressly left open the question of which state's law would apply following a § 1404(a) transfer "if it was contended that the transferor State would simply have dismissed the action on the ground of *forum non conveniens*." 376 U.S. at 640 [84 S.Ct. at 821]. No subsequent Supreme Court decision has resolved this question. Neither the Ninth Circuit nor any district court in California has ever ruled on the law to be applied under these circumstances. In sum, there is no "controlling" precedent on this issue.

Although several cases in other circuits have addressed this issue in dicta, only one of the decisions cited by Golden Eagle actually held that the transferor forum's choice-of-law rules apply even though that state's own courts would have dismissed under *forum non conveniens*.

\* \* \*

This is not an issue on which only one result is possible as a matter of law. The Supreme Court went out of its way in *Van Dusen* to identify the choice of law in a case such as this as an open question. Few federal courts have subsequently addressed the question, and even fewer have given it any analysis. At least one federal district judge has stated, albeit in dictum, that the original forum's law does *not* control where that state's courts would have dismissed under *forum non conveniens*. *Mayers v. Northbrook Insurance Co.*, No. 77 C 4358 (N.D.Ill. January 19, 1979). (A LEXIS copy of the court's unreported opinion is attached.) Burroughs' motion was based on a plausible view of the proper choice-of-law rule in this case.

---

The contrast between the two memoranda speaks for itself. It is a dramatic illustration of the sort of practice at which Rule 11 is aimed and of the result it seeks to achieve. There would be little point to Rule 11 if it tolerated counsel making an argument for the extension of existing law disguised as one based on existing law. The certification made by counsel signing the motion is not intended to leave the court guessing as to which argument is being made, let alone to permit counsel to lead the court to believe that an argument is supported by existing law when it is not.

■ The duty of candor is a necessary corollary of the certification required by Rule 11. A court has a right to expect that counsel will state the controlling law fairly and fully; indeed, unless that is done the court cannot perform its task properly. A lawyer must not misstate the law, fail to disclose adverse authority (not disclosed by his opponent), or omit facts critical to the application of the rule of law relied on.

■ These are settled principles.[3] Rule 3.3 of the ABA's Model Rules states that

A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal.... Model Rules of Professional Conduct Rule 3.3 (1983)

The accompanying comment states in part:

The advocate's task is to present the client's case with persuasive force. Performance of that duty while maintaining confidences of the client is qualified by

3. The Advisory Committee Notes to Rule 11 state that "[t]he new language is intended to reduce the reluctance of courts to impose sanctions ... by emphasizing the responsibilities of the attorney and reenforcing those obligations by the impositions of sanctions." 97 F.R.D. 165, 198 (1983).

the advocate's duty of candor to the tribunal.

\* \*, \* \* \* \*

Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal. A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities. Furthermore, as stated in paragraph (a)(3), an advocate has a duty to disclose directly adverse authority in the controlling jurisdiction which has not been disclosed by the opposing party. The underlying concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case. Model Rules of Professional Conduct Rule 3.3 comment (1983). Ethical Consideration 7–23 under the former ABA Model Code further explains:

The complexity of law often makes it difficult for a tribunal to be fully informed unless the pertinent law is presented by the lawyers in the cause. A tribunal that is fully informed on the applicable law is better able to make a fair and accurate determination of the matter before it. The adversary system contemplates that each lawyer will present and argue the existing law in the light most favorable to his client. Where a lawyer knows of legal authority in the controlling jurisdiction directly adverse to the position of his client, he should inform the tribunal of its existence unless his adversary has done so, but, having made such disclosure, he may challenge its soundness in whole or in part. Model Code of Professional Responsibility EC 7–23 (1979).

The most elemental rationale of this branch of Rule 11 is that fair decisions cannot be expected if the deciding tribunal is not fully informed, let alone if it is misled. It is as badly misled by an argument purporting to reflect existing law when such law does not exist as by a failure to disclose adverse authority. The misleading character of defendant's counsel's memorandum is convincingly demonstrated by their subsequent memorandum. That is a sufficient basis for finding a violation of Rule 11, regardless of their purpose and whether they may have acted in good faith. The absence of a purpose to cause unnecessary delay or needless expense—or, for that matter, the absence of bad faith—is irrelevant to the imposition of sanctions under the first prong of Rule 11.

### The Economic Loss Issue

■ In support of the motion to dismiss plaintiff's claim for economic loss, counsel quoted from *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 23, 403 P.2d 145 (1965), that "in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic losses alone." Counsel failed to cite the California Supreme Court's recent opinion in *J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 157 Cal. Rptr. 407, 598 P.2d 60 (1979), in which the court held economic loss to be recoverable in a negligence action against a contractor, saying:

This court has held that a plaintiff's interest in prospective economic advantage may be protected against injury occasioned by negligent as well as intentional conduct. For example, economic losses such as lost earnings or profits are recoverable as part of general damages in a suit for personal injury based on negligence. \* \* \* Where negligent conduct causes injury to real or personal property, the plaintiff may recover damages for profits lost during the time necessary to repair or replace the property.

\* \* \* \* \* \*

Even when only injury to prospective economic advantage is claimed, recovery is not foreclosed. Where a special relationship exists between the parties, a plaintiff may recover for loss of expected economic advantage through the negligent performance of a contract although the parties were not in contractual privity.

157 Cal.Rptr. at 410, 598 P.2d at 64 (citations omitted)

It is true that *J'Aire,* inexplicably, did not cite *Seely.* But inasmuch as the later decision is on its face at least inconsistent with the former, it cannot be ignored in a discussion of the claim for economic loss, even if it can be distinguished.

Further, the effect of *J'Aire* on *Seely* was specifically considered in two recent decisions of the California intermediate appellate court, the Court of Appeal. In *Pisano v. American Leasing,* 146 Cal.App.3d 194, 194 Cal.Rptr. 77 (1983), the court reversed a summary judgment for defendant manufacturer holding that plaintiff, to whom defendant had supplied a defective sander, could recover economic loss suffered in his business as a result of the supplier's negligence. The court appears to have reasoned that *J'Aire* rather than *Seely,* both of which are cited, controlled. *Pisano* was followed in *Huang v. Garner,* 157 Cal.App.3d 404, 203 Cal.Rptr. 800 (1984), again citing both *Seely* and *J'Aire.*

Counsel distinguished *J'Aire* in their reply only after it was cited in plaintiff's opposition. They did not cite either *Pisano* or *Huang* while asserting in their reply that Seely "has never been overruled." That statement, while technically correct, becomes misleading in the light of two intermediate appellate decisions which relied on *J'Aire* in explaining away *Seely.*

In their Rule 11 memorandum counsel offer a "principled basis" for distinguishing *J'Aire.* Again, the argument made there in support of the continuing vitality of *Seely* is entirely acceptable but it is *not* the argument made in the earlier memorandum.

Moreover, the failure to cite, if not *Huang,* at least *Pisano,* decided almost a year earlier, is a violation of counsel's "duty to disclose directly adverse authority." See pp. 127–128, above. Counsel claim to have been "unaware of [those cases] until the oral argument on the motion." For counsel to have been unaware of those cases means that they did not Shepardize their principal authority, *Seely ;*

as early as February 1984, Shepard lists *Pisano* under *Seely* as "distinguished." In some circumstances a failure to discover adverse authority after a reasonable search has been made may be excusable. Counsel's declaration does not specify what search was made here, but their Rule 11 memorandum bespeaks their capacity to find *supporting* authority, such as the Lexis copy of an unreported district court decision and a decision of the California Court of Appeal issued on July 13, 1984. Thus their failure to cite adverse authority is not excusable.

### Conclusion

Accordingly the Court finds and concludes, first, that defendant's memorandum in support of its motion based on the statute of limitations was not warranted by existing law, contrary to the representation made therein by counsel, and, second, that counsel failed to make a reasonable inquiry to determine whether the motion to dismiss the economic loss claim was warranted by existing law. The memorandum therefore was signed in violation of Rule 11.

Counsel for plaintiff are directed to submit a declaration setting forth the record of plaintiff's reasonable expenses, including reasonable attorney's fees, incurred in opposing the motion. The Court will thereafter issue its order specifying the amount assessed as sanctions.

Sanctions shall be paid by the firm of Kirkland & Ellis and shall not be reimbursed by the defendant. In addition, both Kirkland & Ellis and Crosby, Heafey, Roach & May, local counsel, shall submit a statement certifying that a copy of this opinion was given to each partner and associate of each firm.

IT IS SO ORDERED.