GOLDEN EAGLE DISTRIBUTING
CORPORATION,
Plaintiff-Appellee,

v.

BURROUGHS
CORPORATION, Defendant,

and

Kirkland & Ellis, Appellant.

No. 84–2602.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 7, 1985.

Decided Oct. 9, 1986.

---

Jeffrey Alan Miller, Perez, McNabb & Cook, Orinda, Cal., for plaintiff-appellee.

James J. Brosnahan, Morrison & Foerster, San Francisco, Cal., for appellant.

Before SCHROEDER, REINHARDT, and BEEZER, Circuit Judges.

SCHROEDER, Circuit Judge.

## I. INTRODUCTION

This is an appeal from the imposition of sanctions under Rule 11 of the Federal Rules of Civil Procedure as amended in 1983. The appellant, a major national law firm, raises significant questions of first impression.

The relevant portions of the amended Rule provide:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address.... The signature of an attorney or party constitues a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

The appellant Kirkland & Ellis is the law firm that represented the defendant Burroughs in the underlying litigation. The sanctions which we review here stemmed from an unsuccessful motion for summary judgment filed by appellant on Burroughs' behalf.

After denying the motion for summary judgment, the district court entered an order, on its own motion, calling for briefs as to whether sanctions should be imposed for violation of Rule 11. After reviewing the briefs and hearing argument, it imposed

the sanction of attorneys' fees on the appellant and explained its reasons for doing so in a published opinion. *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 103 F.R.D. 124 (N.D.Cal.1984).

The district court held that the positions taken by the appellant in its motions papers were supportable, both legally and factually. The district court concluded, however, that in these papers the appellant had engaged in misleading conduct which contravened the court's interpretation of the requirements of Rule 11. Specifically, the court held that the appellant should have stated that a position it was taking was grounded in a "good faith argument for the extension, modification, or reversal of existing law" rather than implying that its position was "warranted by existing law." Second, the court held that the appellant's moving papers had failed to cite contrary authority in violation of the ABA's Model Rules of Professional Conduct, and that this breach constituted a violation of Rule 11.

In this appeal, we must decide whether the district court correctly interpreted Rule 11.

## II. PROCEDURAL BACKGROUND OF THIS DISPUTE

Golden Eagle Distributing Corporation filed the underlying action in Minnesota state court for fraud, negligence, and breach of contract against Burroughs, because of an allegedly defective computer system. Burroughs removed the action to the federal district court in Minnesota. Burroughs then moved pursuant to 28 U.S.C. § 1404(a) to transfer the action to the Northern District of California. The district court granted the motion, noting that all of the sources of proof, including the relevant documents and the computer system at issue, and almost all of the witnesses, were located in California.

Burroughs next filed the motion for summary judgment which gave rise to the sanctions at issue here. It argued that the California, rather than the Minnesota, statute of limitations applied and that all of

Golden Eagle's claims were time-barred under California law. It also contended that Golden Eagle's claim for economic loss arising from negligent manufacture lacked merit under California law. Golden Eagle filed a response, arguing that Minnesota law governed the statute of limitations question and that Burroughs had misinterpreted California law regarding economic loss. Burroughs subsequently filed a reply memorandum addressing Golden Eagle's arguments and Golden Eagle followed with a sur-reply.

After a hearing, the district judge denied Burroughs' motion and directed the Kirkland & Ellis attorney who had been responsible for the summary judgment motion to submit a memorandum explaining why sanctions should not be imposed under Rule 11. After receiving memoranda on this issue from both sides, Judge Schwarzer held that Burroughs' memoranda in support of its motion for summary judgment violated Rule 11 and imposed sanctions of attorney's fees in the amount of $3,155.50 against Kirkland & Ellis. *Golden Eagle*, 103 F.R.D. 124.

Proper understanding of this appeal requires some comprehension of the nature of Burroughs' arguments and the faults which the district court found with them. They are set forth in more detail in the district court's opinion. We here endeavor only to capture their essence.

### A. The Statute of Limitations Argument

Kirkland & Ellis's opening memorandum argued that Golden Eagle's claims were barred by California's three-year statute of limitations. The question was whether the change of venue from Minnesota to California affected which law applied. Kirkland & Ellis essentially argued that under *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), California's law applied because a Minnesota court would have dismissed the action on *forum non conveniens* grounds. Its memorandum in support of the motion for summary judgment stated:

In *Van Dusen,* the Supreme Court declined to state a *per se* rule requiring a transferee court to apply the original forum's choice-of-law rules under all circumstances. Although the Court held that in that case the transferee court should apply the state law that would have applied had there been no change of venue, the Court stated specifically that the original state's law should not necessarily apply "if it was contended that the transferror State would simply have dismissed the action on the ground of *forum non conveniens.*" This case falls squarely within the *forum non conveniens* exception noted by the Court in *Van Dusen.*

(Citation omitted.)

In imposing sanctions, the district court held that Kirkland & Ellis's argument was "misleading" because it suggested that there already exists a *forum non conveniens* exception to the general rule that the transferor's law applies. *Golden Eagle,* 103 F.R.D. at 126–28. *Van Dusen* raised the issue but did not decide it. 376 U.S. at 640, 84 S.Ct. at 821.

Kirkland & Ellis's corollary argument, that a Minnesota court would have dismissed the case on *forum non conveniens* grounds, was found to be "misleading" because it failed to note that one prerequisite to such a dismissal is that an alternative forum be available. *See Bongards' Creameries v. Alfa-Laval, Inc.,* 339 N.W.2d 561, 562 (Minn.1983). Burroughs had pointed out in its Rule 11 memorandum, however, that the meaning of the term "available forum" is not settled. *Compare Wasche v. Wasche,* 268 N.W.2d 721, 723 (Minn.1978) (statute of limitations bar may affect dismissal) *with Hill v. Upper Mississippi Towing Corp.,* 252 Minn. 165, 89 N.W.2d 654 (1958) (suggesting available forum is where defendant is amenable to process).

The district court, in awarding sanctions for violation of Rule 11, compared the plaintiff's original motion papers with the brief that the plaintiff filed after it had lost the motion and had been asked to show cause why sanctions should not be imposed. The court held that the argument presented in the Rule 11 memorandum was a worthy one to advance, and indicated that had it been made in that form in the first place, sanctions would not have been appropriate because the argument would have qualified under Rule 11 as a "good faith argument for the extension ... of existing law." The court imposed sanctions because Kirkland & Ellis did not make the argument in the same way in its original motions papers. The court thus looked not to the merits of the position originally taken by the plaintiff, but to the manner in which the position was advocated.

## B. The Economic Damages Argument

Kirkland & Ellis also argued that Golden Eagle's claim for negligent manufacture lacked merit because Golden Eagle sought damages for economic loss, and such damages are not recoverable under California law. Kirkland & Ellis relied on *Seely v. White Motor Co.,* 63 Cal.2d 9, 403 P.2d 145, 45 Cal.Rptr. 17 (1965). In *Seely,* the California Supreme Court limited recovery in negligence and strict liability tort actions to damages for personal injuries and harm to physical property.

The district court sanctioned Kirkland & Ellis for not citing three cases whose holdings it concluded were adverse to *Seely:* the California Supreme Court's opinion in *J'Aire Corp. v. Gregory,* 24 Cal.3d 799, 598 P.2d 60, 157 Cal.Rptr. 407 (1979), and two intermediate appellate court decisions interpreting *J'Aire's* effect on *Seely, Pisano v. American Leasing,* 146 Cal.App.3d 194, 194 Cal.Rptr. 77 (1983), and *Huang v. Garner,* 157 Cal.App.3d 404, 203 Cal.Rptr. 800 (1984).[1] The district court held that these omissions violated counsel's duty to disclose adverse authority, embodied in Model Rule 3.3, Model Rules of Professional Con-

---

1. Kirkland & Ellis did cite and discuss *J'Aire* in its reply brief after the case was called to its attention in plaintiff's response.

duct Rule 3.3 (1983), which the court viewed as a "necessary corollary to Rule 11." *Golden Eagle*, 103 F.R.D. at 127.

Kirkland & Ellis continues to maintain vigorously that the cases are not directly adverse authority and that they are distinguishable. In this appeal we assume that they are directly contrary in order to reach the larger question of whether Kirkland & Ellis's failure to cite them was a violation of Rule 11.

## III. THE BACKGROUND OF THE 1983 AMENDMENTS TO RULE 11 AND THEIR INTERPRETATION IN THE COURTS

■ Under the 1983 amendments to Rule 11, an attorney signing any motion in federal court warrants that the motion is well-grounded in fact, that it is warranted by existing law or a good faith argument for an extension, modification or reversal of existing law, and that it is not filed for an improper purpose. Breach of the warranty gives rise to mandatory sanctions against the represented party, the lawyer, or both. *See, e.g., Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 n. 7 (2d Cir.1985).

Under the old rule, a lawyer certified that there was "good ground" to support a pleading. Disciplinary action was appropriate only for "willful violation."

■ The Advisory Committee Note to the amendments comments at length on their purpose. The members of the Advisory Committee, as well as its reporter, also commented extensively as individuals. All the comments make it clear that the amendments' major purposes were the deterrence of dilatory or abusive pretrial tactics and the streamlining of litigation. The Advisory Committee Note on the amendments to Rule 11, for example, states that the amended Rule will accomplish these purposes "by lessening frivolous claims or defenses." 97 F.R.D. 165, 198 (1983). Judge Mansfield, the Chairman of the Advisory Committee, in a letter to Judge Gignoux, the Chairman of the Standing Committee on Rules of Practice and Procedure,

indicated that the purpose of the amendments was to "reduce frivolous claims, defenses or motions" and to deter "costly meritless maneuvers." *Id.* at 192. Judge Wiggins, now a member of this court, and then a member of the Advisory Committee, emphasized that the purpose of the amendments was to avoid delay and unnecessary expense in litigation. 101 F.R.D. 161, 177 (1984). These purposes have been echoed by commentators. *See, e.g.,* Marcus, *Reducing Court Costs and Delay: The Potential Impact of the Proposed Amendments to the Federal Rules of Civil Procedure*, 66 Judicature 363, 364 (1983) (The proposed amendments were "designed to deal with precisely the problem of delay and expense."); Note, *Reasonable Inquiry Under Rule 11—Is the Stop, Look, and Investigate Requirement a Litigants' Roadblock?*, 18 Ind.L.Rev. 751, 773 (1985) ("The primary concerns behind these amendments are unnecessary delay and expense in litigation.") (hereinafter cited as Note, *Reasonable Inquiry*).

■ The new Rule was designed to create an affirmative duty of investigation both as to law and as to fact before motions are filed. It creates an objective standard of "reasonableness under the circumstances." Advisory Committee Note, 97 F.R.D. 165, 198 (1983). This was intended to be a standard "more stringent than the original good faith formula" so "that a greater range of circumstances will trigger its violation." *Id.* at 198–99.

This expansion gave rise to concerns that the new Rule might have unfortunate results in at least two respects. The first was that the amended Rule might tend to chill creativity in advocacy and impede the traditional ability of the common law to adjust to changing situations. The Advisory Committee responded to this concern by suggesting that courts should not hold a lawyer to a standard measured by what the judge later decides, but should look at the situation which existed when the paper was filed.

The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.

*Id.* at 199.

Another major concern was that the broadened availability of sanctions might lead to protracted and expensive satellite litigation over the appropriateness of sanctions. The Committee acknowledged the legitimacy of that concern. Its reporter, in remarks to the Second Circuit, described his own "Kafkaesque dream" of courts being besieged by motions to sanction attorneys for making frivolous motions for sanctions. 101 F.R.D. 161, 200 (1984). The overall Committee judgment, however, was that although lawyers might be carried away for a time, the management efficiency of the district courts would overcome any temporary litigation burden. *Id.*

The three years since the amended Rule became effective have indeed seen a great deal of activity in the district courts under Rule 11. Literally hundreds of published opinions have appeared in the *Federal Supplement* and *Federal Rules Decisions*. Although relatively few decisions have as yet percolated up to the courts of appeals, and no significant rulings have been issued by the Supreme Court, the extent of national interest already has prompted considerable study by the representatives of the bar, the bench and the scholarly community. *See, e.g.,* S.M. Kassin, *An Empirical Study of Rule 11 Sanctions* (Federal Judicial Center 1985) (hereinafter cited as S.M. Kassin); Section of Litigation, American Bar Association, *Sanctions: Rule 11 and Other Powers* (1986) (hereinafter cited as *Sanctions*); Rothschild, Fenton, & Swanson, *Rule 11: Stop, Think, and Investigate,* 11 Litigation, Winter 1985, at 13; Note, *Reasonable Inquiry, supra.*

The decisions to date, both of the district and appellate courts, not surprisingly re-flect the drafters' stated intent to curb delay and expense caused by the filing of unsupported pleadings and motions. The leading decision in this circuit has identified the two major problems to which the amendments were directed as the problem of "frivolous filings" and the problem of "misusing judicial procedures as a weapon for personal or economic harassment." *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 830 (9th Cir.1986). Along the same lines, the leading decision of the Second Circuit announced tests for the mandatory imposition of sanctions under both parts of the Rule. Sanctions should be imposed if (1) "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading [or other paper] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law" or if (2) "a pleading [or other paper] has been interposed for any improper purpose." *Eastway,* 762 F.2d at 254; *see also McLaughlin v. Western Casualty & Surety Co.,* 603 F.Supp. 978, 981 (S.D. Ala.1985).

Courts have sanctioned attorneys for violating the first part of the Rule in a variety of circumstances. A legal position which is superficially plausible has been held sanctionable where it has no basis in the law and ignores relevant United States Supreme Court authority contrary to the position asserted. *Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194, 205 (7th Cir. 1985). A factually baseless contention that exigent circumstances justified a warrantless entry led to sanctions in *Frazier v. Cast,* 771 F.2d 259 (7th Cir.1985). A leading example of imposition of sanctions for violation of the second part of Rule 11 is *Chevron, USA, Inc. v. Hand,* 763 F.2d 1184 (10th Cir.1985), in which sanctions were upheld because the defendant had agreed to a stipulated settlement to dismiss the case and hired another attorney solely to delay the entry of the stipulated dismissal.

■ There is general agreement that whether the first of the two Rule 11 re-

quirements has been satisfied is to be determined by use of an objective standard. *See, e.g., Zaldivar,* 780 F.2d at 830–31; *Eastway,* 762 F.2d at 253–54; Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 191 (1985). "Rule 11 sanctions shall be assessed if the paper filed in district court and signed by an attorney or an unrepresented party is frivolous, legally unreasonable or without factual foundation, even though the paper was not filed in subjective bad faith." *Zaldivar,* 780 F.2d at 831. In *Zaldivar* the district court had held that there was no reasonable basis for bringing the lawsuit. We reversed the sanctions, stating that "[w]e believe a plausible, good faith argument can be made by a competent attorney to the contrary." *Id.* at 833; *see also Davis v. Veslan Enterprises,* 765 F.2d 494, 498 (5th Cir.1985) ("the district court's determination to impose sanctions may depend on 'whether the pleading, motion, or other paper was based on a plausible view of the law.' ") (quoting comment to 1983 amendments); *Eastway,* 762 F.2d at 254 ("[W]here it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Rule 11 has been violated.").

As to the second, "not for improper purposes," part of Rule 11, we emphasized in *Zaldivar* the objective nature of the standard. We stated that a complaint which complies with the "well-grounded in fact and warranted by ... law" clause cannot be sanctioned as harassment under Rule 11, regardless of the subjective intent of the attorney or litigant. *Zaldivar,* 780 F.2d at 832.

 We conclude from this review that there is a dominant theme in the comments made by the Rules' proponents at the time of its adoption and by its implementers in the court decisions since its adoption. That theme is that the Rule discourages wasteful, costly litigation battles by mandating the imposition of sanctions when a lawyer's position, after reasonable inquiry, will not support a reasonable belief that there is a sound basis in law or in fact for the position taken. If, judged by an objective standard, a reasonable basis for the position exists in both law and in fact at the time that the position is adopted, then sanctions should not be imposed. *Zaldivar,* 780 F.2d at 832; *Eastway,* 762 F.2d at 254.

## IV. STANDARD OF REVIEW

 The courts of appeals have given some consideration to standards of review in sanction cases. Because Rule 11 mandates sanctions when it is violated, the prevailing view of the courts of appeals is that whether specific conduct violated the Rule is a legal question which must be reviewed de novo. *Zaldivar,* 780 F.2d at 828; *Eastway,* 762 F.2d at 254 n. 7. If there is any dispute as to factual determinations concerning the conduct, the determinations would be reviewed under a clearly erroneous standard. *Zaldivar,* 780 F.2d at 828. Since the district court has wide discretion in determining what sanctions should be imposed for violation of the Rule, however, the appropriateness of the sanctions must be reviewed under an abuse of discretion standard. *Id.; Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1175 (D.C.Cir.1985); *Eastway,* 762 F.2d at 254 n. 7.

## V. THE APPLICATION OF RULE 11 IN THIS CASE

The district court's application of Rule 11 in this case strikes a chord not otherwise heard in discussion of this Rule. The district court did not focus on whether a sound basis in law and in fact existed for the defendant's motion for summary judgment. Indeed it indicated that the motion itself was nonfrivolous. 103 F.R.D. at 126. Rather, the district court looked to the manner in which the motion was presented. The district court in this case held that Rule 11 imposes upon counsel an ethical "duty of candor." *Golden Eagle,* 103 F.R.D. at 127. The court drew its principles from Rule 3.3 of the ABA's Model

Rules and the accompanying comment.[2] It said:

> The duty of candor is a necessary corollary of the certification required by Rule 11. A court has a right to expect that counsel will state the controlling law fairly and fully; indeed, unless that is done the court cannot perform its task properly. A lawyer must not misstate the law, fail to disclose adverse authority (not disclosed by his opponent), or omit facts critical to the application of the rule of law relied on.

*Golden Eagle,* 103 F.R.D. at 127.

With the district court's salutary admonitions against misstatements of the law, failure to disclose directly adverse authority, or omission of critical facts, we have no quarrel. It is, however, with Rule 11 that we must deal. The district court's interpretation of Rule 11 requires district courts to judge the ethical propriety of lawyers' conduct with respect to every piece of paper filed in federal court. This gives us considerable pause.

We need not here definitively resolve the problems of the proper role of the courts in enforcing the ethical obligations of lawyers.[3] We must consider only whether Rule 11 requires the courts to enforce ethical standards of advocacy beyond the terms of the Rule itself.

The district court's invocation of Rule 11 has two aspects. The first, which we term "argument identification" is the holding that counsel should differentiate between an argument "warranted by existing law" and an argument for the "extension, modification, or reversal of existing law." The second is the conclusion that Rule 11 is violated when counsel fails to cite what the district court views to be directly contrary authority. We deal with each in turn, noting at the outset that many of our observations are applicable to both aspects of the court's interpretation of Rule 11.

### A. "Argument Identification"

We look first to the text of Rule 11. It requires that the lawyer certify that a pleading, motion or other paper is "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." The district court held that the lawyer in this case had a good faith argument for the extension of the law, but violated Rule 11 when he characterized his position as warranted by existing law.

The text of the Rule, however, does not require that counsel differentiate between a position which is supported by existing law and one that would extend it. The Rule on its face requires that the motion be either one or the other. Moreover, there is nothing in any of the statements of the proponents of the amended Rule or in the authorities we have surveyed since its

---

2. Rule 3.3 states in relevant part:
 (a) A lawyer shall not knowingly:
 (1) make a false statement of material fact or law to a tribunal;

 . . . . .

 (3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel....

 Model Rules of Professional Conduct Rule 3.3.
 The comment states in relevant part:
 > The advocate's task is to present the client's case with persuasive force. Performance of that duty while maintaining confidences of the client is qualified by the advocate's duty of candor to the tribunal....

 . . . . .

 > Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal. A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities. Furthermore as stated in paragraph (a)(3), an advocate has a duty to disclose directly adverse authority in the controlling jurisdiction which has not been disclosed by the opposing party. The underlying concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case.

 Model Rules of Professional Conduct Rule 3.3 comment.

3. Our judicial system reserves at least some role. *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766–67, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980); *Eash v. Riggins Trucking Inc.,* 757 F.2d 557, 564–65 (3d Cir.1985) (en banc).

adoption which suggests such a requirement.

The district court's ruling appears to go even beyond the principle of Rule 3.3 of the ABA Model Rules which proscribes "knowing" false statements of material fact or law. The district court made no finding of a knowing misstatement, and, given the well-established objective nature of the Rule 11 standard, such a requirement would be inappropriate. Both the earnest advocate exaggerating the state of the current law without knowingly misrepresenting it, and the unscrupulous lawyer knowingly deceiving the court, are within the scope of the district court's interpretation.

This gives rise to serious concerns about the effect of such a rule on advocacy. It is not always easy to decide whether an argument is based on established law or is an argument for the extension of existing law. Whether the case being litigated is or is not materially the same as earlier precedent is frequently the very issue which prompted the litigation in the first place. Such questions can be close.

■ Sanctions under Rule 11 are mandatory. *See, e.g., Eastway*, 762 F.2d at 254 n. 7. In even a close case, we think it extremely unlikely that a judge, who has already decided that the law is not as a lawyer argued it, will also decide that the loser's position was warranted by existing law. Attorneys who adopt an aggressive posture risk more than the loss of the motion if the district court decides that their argument is for an extension of the law which it declines to make. What is at stake is often not merely the monetary sanction but the lawyer's reputation.

■ The "argument identification" requirement adopted by the district court therefore tends to create a conflict between the lawyer's duty zealously to represent his client, Model Code of Professional Responsibility Canon 7, and the lawyer's own interest in avoiding rebuke. The concern on the part of the bar that this type of requirement will chill advocacy is understandable.[4] As the appellant points out in its appellate brief, courts "should not be empowered to sanction for the level of assurance used by the brief-writer."

Such an effect on advocacy was one of the principal risks associated with the 1983 amendments. It is an effect which the proponents of the amended Rule sought to avoid. *In re Yagman*, 796 F.2d 1165, 1182 (9th Cir.1986). The language of the Rule thus refers to whether the document being filed is "well grounded in fact and is warranted by ... law." The Advisory Committee Note charged courts to look to "what was reasonable to believe at the time the ... paper was submitted." It said that the Rule is "not intended to chill an attorney's enthusiasm or creativity...." Advisory Committee Note, 97 F.R.D. at 199.

The imposition of the district court's requirement appears to be at cross purposes with the Rule 11 amendments in still another fundamental respect. The key objective of the amendments to the Rule was to reduce cost and delay in the courts. *See* materials cited in Part III *supra*. Asking judges to grade accuracy of advocacy in connection with every piece of paper filed in federal court multiplies the decisions which the court must make as well as the cost for litigants.

■ Moreover, Rule 11 does not apply to the mere making of a frivolous argument. The Rule permits the imposition of sanctions only when the "pleading, motion, or other paper" itself is frivolous, not when one of the arguments in support of a pleading or motion is frivolous. Nothing in the language of the Rule or the Advisory Committee Notes supports the view that the Rule empowers the district court to impose sanctions on lawyers simply because a particular argument or ground for relief contained in a non-frivolous motion is found by

---

**4.** The ABA's litigation section has commented, for example, that the *Golden Eagle* decision "caused complete consternation in the practicing bar which sees vigorous advocacy, seemingly without regard to its possible misrepresentations to the court, as the hallmark of aggressive and justified representation of the client." *Sanctions, supra* at 8.

the district court to be unjustified. In short, the fact that the court concludes that one argument or sub-argument in support of an otherwise valid motion, pleading, or other paper is unmeritorious does not warrant a finding that the motion or pleading is frivolous or that the Rule has been violated.

Litigation on the issue of sanctions, like any litigation, is expensive. In this case, for example, the underlying legal issues which prompted the sanctions have now been briefed three times: first in the motion; second, at the court's request, in the Rule 11 responses; third, on this appeal. It is not unusual for lawyers involved in sanction proceedings to hire other lawyers to represent them. Here the appellant is a prominent Chicago law firm represented in this appeal by a prominent San Francisco firm. Litigation expenses already must have exceeded, many times over, the few thousand dollars of sanctions imposed. In another case, the law firm appealing an order of sanctions imposed by the same district judge, obtained the services of the reporter for the Rule 11 amendments. *See Huettig & Schromm, Inc. v. Landscape Contractors Council,* 790 F.2d 1421 (9th Cir.1986).

The district court's interpretation makes the Rule more complex than it needs to be and creates costly obstacles for lawyers. We agree with the recent comment of one knowledgeable observer who has followed the development of the Rules of Civil Procedure as closely as anyone in America: "[M]ore and 'better' rules may not be the answer. Rules require sanctions. Sanctions require enforcement proceedings. These absorb resources of time, energy, and money that it is the very purpose of the rules to spare." Rosenberg, *The Federal Civil Rules After Half A Century,* 36 Me.L.Rev. 243, 244 (1984).

There is another risk when mandatory sanctions ride upon close judicial decisions. The danger of arbitrariness increases and the probability of uniform enforcement declines. The Federal Judicial Center recently studied the application of Rule 11 in fairly routine cases involving issues far less sophisticated than those involved in this case. The conclusion was as follows:

> Overall, we found that although the 1983 amendments appear to have increased judges' readiness to enforce the new certification requirements, their success thus far has been limited. Of specific concern are the findings that there is a good deal of interjudge disagreement over what actions constitute a violation of the rule, only partial compliance with the desired objective standard, inaccurate and systematically biased normative assumptions about other judges' reactions to frivolous actions, and a continued neglect of alternative, nonmonetary means of response.

S.M. Kassin, *supra,* at xi.

Although this is the first reported case to require a differentiation between arguments based on existing law and arguments calling for an extension of existing law, most existing authority implicitly rejects such an interpretation by looking to whether or not a basis in law or fact exists. We said in *Zaldivar* that sanctions should not have been imposed where a "plausible good faith argument can be made." *Zaldivar,* 780 F.2d at 832. The district court's ruling here is not reconcilable with that view. Nor is the district court's ruling supported by or consistent with presently controlling law, since *Zaldivar* applied the rule to the pleading or motion itself and not to the particular supporting grounds advanced.

### B. The Failure to Cite Adverse Authority

We turn now to the aspect of the district court's ruling which sanctioned the attorneys for failing to cite contrary authority. Many of the same considerations discussed above apply with at least equal force to it. The district court imposed sanctions not for the filing of a motion or pleading it believed violated terms of the rule, but because it believed additional cases should have been discussed.

Were the scope of the rule to be expanded as the district court suggests, mandatory sanctions would ride on close decisions concerning whether or not one case is or is not the same as another. We think Rule 11 should not impose the risk of sanctions in the event that the court later decides that the lawyer was wrong. The burdens of research and briefing by a diligent lawyer anxious to avoid any possible rebuke would be great. And the burdens would not be merely on the lawyer. If the mandatory provisions of the Rule are to be interpreted literally, the court would have a duty to research authority beyond that provided by the parties to make sure that they have not omitted something.

The burden is illustrated in this case where the district court based its imposition of sanctions in part upon Kirkland & Ellis's failure to cite authorities which the court concluded were directly adverse to a case it did cite. The district court charged the appellant with constructive notice of these authorities because they were identified in Shepard's as "distinguishing" the case Kirkland & Ellis relied on.

This use of Rule 11, far from avoiding excess litigation, increases it. We must not interpret Rule 11 to create two ladders for after-the-fact review of asserted unethical conduct: one consisting of sanction procedures, the other consisting of the well-established bar and court ethical procedures. Utilizing Rule 11 to sanction motions or pleadings not well-grounded in fact or law, or papers filed for improper purposes, gives full and ample play to the 1983 amendments.

In rejecting the district court's broad interpretation of Rule 11, we do not suggest that the court is powerless to sanction lawyers who take positions which cannot be supported. A lawyer should not be able to proceed with impunity in real or feigned ignorance of authorities which render his argument meritless. *See, e.g., Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 205 (7th Cir.1985). In addition, Rule 11 is not the only tool available to judges in imposing sanctions on lawyers. However, neither Rule 11 nor any other rule imposes a requirement that the lawyer, in addition to advocating the cause of his client, step first into the shoes of opposing counsel to find all potentially contrary authority, and finally into the robes of the judge to decide whether the authority is indeed contrary or whether it is distinguishable. It is not in the nature of our adversary system to require lawyers to demonstrate to the court that they have exhausted every theory, both for and against their client. Nor does that requirement further the interests of the court. It blurs the role of judge and advocate. The role of judges is not merely to

> match the colors of the case at hand against the colors of many sample cases spread out upon their desk.... It is when the colors do not match, when the references in the index fail, when there is no decisive precedent, that the serious business of the judge begins.

B. Cardozo, *The Nature of the Judicial Process* 21 (1922). In conducting this "serious business," the judge relies on each party to present his side of the dispute as forcefully as possible. The lawyers cannot adequately perform their role if they are required to make predeterminations of the kind the district court's approach to Rule 11 would necessitate.

## VI. CONCLUSION

Amended Rule 11 of the Federal Rules of Civil Procedure does not impose upon the district courts the burden of evaluating under ethical standards the accuracy of all lawyers' arguments. Rather, Rule 11 is intended to reduce the burden on district courts by sanctioning, and hence deterring, attorneys who submit motions or pleadings which cannot reasonably be supported in law or in fact. We therefore reverse the district court's imposition of sanctions for conduct which it felt fell short of the ethical responsibilities of the attorney.

Reversed.