UNITED SERVICES FUNDS, Plaintiff,

v.

David H. WARD, Defendant.

No. A87–409 CIV.

United States District Court,
D. Alaska.

Sept. 21, 1988.

Peter J. Crosby, Lynch, Crosby, Molenda & Sisson, Anchorage, Alaska, for plaintiff.

Timothy J. Petumenos, Birch, Horton, Bittner, Cherot & Anderson, Anchorage, Alaska, for defendant.

KLEINFELD, District Judge.

■ This decision grants sanctions under Rule 11 of the Federal Rules of Civil Procedure. The sanctioned law firm used as the basis for its position an affidavit which the witness later testified was a lie, without disclosing the later repudiation to the court.

## FINDINGS OF FACT

Based upon affidavits, deposition testimony, and testimony at the Rule 11 hearing which was held in this case, and in addition to the findings which were placed on the record orally at that hearing, the court finds as follows:

### The representation that the judgment was satisfied.

Ward's attorneys (the firm of Birch, Horton, Bittner, Pestinger & Anderson in general, and Stanley T. Lewis individually), contended, in their opposition to U.S.F.'s proposed order confirming and extending the writ of attachment, that the underlying Canadian judgment had already been fully satisfied, and that there was therefore no ground for extending the writ of attachment in order to satisfy that judgment. There was, however, no substantial factual basis for that contention. The Advisory Committee notes on the 1983 amendments to Rule 11 say that the measure of "reasonable inquiry" may depend on how much time is available, and whether counsel must rely upon another attorney. In making the contention Ward's attorneys depended upon representations made by another lawyer involved with Ward's legal affairs.

Had there been a more substantial period of time for Ward's attorneys to investigate the matter, depending on those representations might not constitute reasonable inquiry under Rule 11. In this case, however, because the time pressure under which Mr. Ward's attorneys were operating was severe, the very limited inquiry made as to whether the judgment had been satisfied should not be deemed sanctionable on the part of the attorneys.

### The Lazzell affidavit.

1. Ward's attorneys used an affidavit signed by Carl Lazzell to support their argument that the agreement underlying the Canadian judgment was illegal or at least contrary to Alaska public policy. Ward's theory was that the stock repurchase agreement between U.S.F. and Ward required Ward to market certain stock pursuant to a block trading scheme that would perpetuate an artificially high price for the stock.

Mr. Lazzell, in his affidavit, characterizes the stock repurchase agreement in such a way that it appears to be an agreement illegally to market the stock to the public. This description of the stock repurchase agreement in the affidavit was the factual basis for the lawyers' argument that the agreement, upon which the Canadian judgment turned, was illegal. The argument of illegality was considered and rejected by the Canadian court before it entered judgment.

2. After he had executed his affidavit, Mr. Lazzell later gave testimony under oath at a deposition taken in the Canadian proceeding that his characterization of the stock repurchase agreement in the sworn affidavit was not the truth. In accordance with Canadian procedure, the deposition was taken in a courtroom with court personnel present, in a manner more like the taking of live testimony than is generally the case with depositions taken in the United States. His testimony suggests that Ward persuaded him to lie in his own affidavit, which Ward had had prepared, in order to stay out of jail himself:

Q. .... Mr. Lazzell, will you tell me, you were going to tell me how it came about that whether there were any threats or other circumstances which led to the signing of the affidavit in Denver?

A. Well, with discussions that I have had with [Ward] before and the threats that have been made on parties who are selling stock and you—you know, some of the things that have come up, I was just worried about not signing the affidavit because it didn't appear to be—I don't

know how to say it. You know, half true and half false.

....

Q. Did he make any—did Mr. Ward make any comment to you about going to jail?

A. Yes.

Q. What did he say?

A. Well, he just said that, you know, if we don't get this thing taken care of properly—

Q. Yes?

A. That we will all go to jail and, in another time, he even suggested that I leave the country.

Q. Which country?

A. U.S. Go to Mexico.

Mr. Lazzell also indicates that he had no part in preparing the language of the affidavit which he signed:

Q. Did you give any instructions to any lawyers at Davis and Company with respect to the preparation of that affidavit?

A. No.

Q. Are the words there your own?

A. No.

Q. How did you come to sign that affidavit?

A. I was at a meeting in Denver and Mr. Ward brought it to Denver for me to sign.

3. The affidavit which Mr. Lazzell signed states in paragraph 7 that the agreement between Ward and U.S.F. was that Ward would:

... purchase a number of shares, the first block, in order to 'make a market in the shares of Tye Explorations Inc.' It was agreed that they would use their 'best efforts' to sell the remainder of the shares.

Paragraph 9 of the affidavit states that Ward and U.S.F. agreed that if Ward was successful in "making a market", he would try to sell the remaining Tye shares at a profit and would have a right to purchase additional shares at a set price. Paragraph 10 states that the agreement was further that Ward and his partner "could purchase the shares from the Fund themselves or they could make arrangements whereby other brokers could purchase those shares."

4. An officer of U.S.F., Clark Aylsworth, subsequently executed an affidavit which flatly contradicts the above descriptions of the agreement between U.S.F. and Ward. That affidavit states that under the agreement Ward simply had an unconditional obligation to repurchase all of the Tye shares from U.S.F., and that there were no agreements regarding the manner of resale by Ward, or even whether the shares were to be resold, since U.S.F. was only concerned with their repurchase by Ward.

In his deposition testimony, Mr. Lazzell states that Mr. Aylsworth's characterization of the agreement between Ward and U.S.F. is correct and represents the true agreement between the parties. Mr. Lazzell thereby repudiated the statements made in his own affidavit.

5. The nature of the repudiation in this case was such that any lawyer knowing what Lazzell had said would have a duty to advise the court of it; once having done so, he would then be free to argue that Lazzell's first version of the facts, the one contained in his affidavit rather than his later testimony, was the accurate version. Mr. Lazzell did not say the same thing in different ways. Instead, in the solemnity of a courtroom deposition, he said that his earlier statement was a lie, signed because Ward had the document prepared and warned him of the risk of going to jail if the securities problem was not solved. It was not permissible for Ward's lawyers to fail to disclose to the court Lazzell's subsequent testimony regarding the veracity of his earlier affidavit. Any lawyer ought to know that he cannot induce a court to rely on testimony which the witness says was a lie, without disclosing the repudiation to the court. Failure to disclose in these circumstances, so that the court can evaluate the repudiation, is too close to the knowing use of perjured testimony.

6. I find that the argument of illegality, based upon Mr. Lazzell's affidavit, was not "well-grounded in fact."

7. United Services Fund's lawyers had attached to their own papers, as exhibit E to their motion for ex parte writ of attachment, an affidavit by Mr. Prince. Paragraph 8 said that Mr. Lazzell had repudiated "an affidavit." Mr. Ward's attorney, Mr. Lewis, should have been aware upon reading of the Prince affidavit that the affidavit of Mr. Lazzell upon which he relied might be the one to which Mr. Prince referred. Mr. Lewis should have inquired into what affidavit had been repudiated.

Mr. Lewis' testimony in this regard has progressed from the simple statement that he did not know of the repudiation by Mr. Lazzell at the time he filed his opposition, to the assertion that he read through the Prince affidavit but did not understand its significance with respect to his use of the Lazzell affidavit, to the argument that the reference in the Prince affidavit to repudiation of "an affidavit" by Mr. Lazzell should not have put him on notice that "the" particular Lazzell affidavit which he was using might be suspect. A lawyer has a duty of "reasonable inquiry," so Mr. Lewis is not immunized by the lack of specificity in the Prince affidavit. The reference to "an" affidavit of Mr. Lazzell should have induced Mr. Lewis to check through his files to see what other affidavits, depositions or statements of Mr. Lazzell were there.

8. In this case, a reasonable inquiry would have led Mr. Lewis to discover that the affidavit which had been repudiated was the very affidavit upon which he was relying, and upon which he sought to have the court rely, since Mr. Lazzell's subsequent deposition testimony in which the repudiation occurred was in the file in the Birch, Horton law office.

9. I find that Ward's attorney breached Rule 11 by signing the Opposition and thereby affirming that to the best of his knowledge, information and belief formed after reasonable inquiry the Opposition was well-grounded in fact. I find that after reasonable inquiry, a competent attorney could not form a reasonable belief that the Opposition filed by Mr. Ward's attorney was well-grounded in fact.

10. I find that Mr. Lewis did in fact read the Prince affidavit during September. The time pressure upon Mr. Ward's attorneys was severe, and I am not sure Mr. Lewis understood the signficance of the Prince affidavit. Mr. Lewis' affidavit submitted on January 8, 1988, explains that there was a copy of Mr. Lazzell's deposition testimony in the files in the Birch, Horton law office but that Mr. Lewis had not read the deposition prior to filing his opposition. He should have read it if he did not, since he was relying on Mr. Lazzell's affidavit for the core of his case. The references to "jail" and "Mexico" were dramatic enough to catch a lawyer's eye even on a fast skim.

11. Although there was very little time for investigation available in September, there was enough time to discover the repudiation. The Prince affidavit advising of the repudiation should have been a warning light, even if Mr. Lewis did not skim through the whole file. A lawyer who could find the Lazzell affidavit after being advised of its possible usefulness, could also find Lazzell's deposition testimony.

12. The testimony at the Rule 11 hearing demonstrated, and I find, that Mr. Lewis was a junior attorney in the Birch, Horton firm reporting to Mr. Petumenos. Mr. Petumenos controlled the file and determined on what parts Mr. Lewis should work. I do not know if Mr. Petumenos gave Mr. Lewis the Lazzell deposition, if Mr. Petumenos was aware of it, or if Mr. Lewis asked for it. Mr. Petumenos had more extensive familiarity with the file than Mr. Lewis, because of Mr. Petumenos' work on the criminal case against Mr. Ward. Because the case at bar was very much a firm responsibility, with Mr. Lewis as a junior attorney acting upon instructions and reporting to others who had greater access to the case material, the firm should be responsible. Mr. Lewis cannot be completely exonerated, since Rule 11 places a responsibility upon him to conduct a reasonable inquiry, but as between the firm and Mr. Lewis, I find that the sanctionable action here should be regarded as a firm responsibility. Division of labor within a firm cannot exonerate the firm in these circum-

stances. I find that there was no dependence on forwarding counsel or on another member of the bar outside the Birch, Horton firm.

## ANALYSIS

Under the 1983 amendments to Rule 11, an attorney signing any pleading, motion or other paper in federal court warrants, among other things, that to the best of his knowledge, information and belief formed after reasonable inquiry it is well-grounded in fact. Fed.R.Civ.P. 11; *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir.1986). The Advisory Committee Note to the amendments makes it clear that the new Rule creates an affirmative duty of investigation as to both the law and the facts, by incorporating a standard which moves beyond the original good-faith requirement to "reasonableness under the circumstances." 97 F.R.D. 165, 198–99 (1983). In addition, willfulness is no longer a prerequisite to disciplinary action. 97 F.R.D. at 200.

■ In this case, a sanction is required regardless of whether Mr. Lewis was aware that Mr. Lazzell had later repudiated his affidavit when Mr. Lewis presented it to the court. An attorney may violate Rule 11 even though he acts in ignorance and without bad faith, if he fails to make a reasonable inquiry to ascertain whether the document he is filing is well-grounded in fact.

■ Once an attorney has breached his certificate under Rule 11 and thereby violated that Rule, sanctions against the represented party, the lawyer, or both become mandatory. The trial judge does not have discretion whether to impose sanctions. *Golden Eagle*, 801 F.2d at 1536. Under the test for mandatory imposition of sanctions cited by the Ninth Circuit in *Golden Eagle*, this court must impose sanctions if "(1) 'after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading [or other paper] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law' or if (2) 'a pleading [or other paper] has been interposed for any improper purpose.'" *Golden Eagle*, 801 F.2d at 1537 (*citing Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 n. 7 (2d Cir.1985).

This court has found that a competent attorney could not, after reasonable inquiry, form a reasonable belief that the Opposition's illegality argument, based on the Lazzell affidavit, was well-grounded in fact. Reasonable inquiry would have disclosed the deposition testimony in which Mr. Lazzell later repudiated his affidavit, a circumstance of which Ward's attorney would have been obligated to advise this court. A sanction is therefore mandated in this case.

■ Ward's attorneys have represented to this court that Mr. Ward had no hand in the lawyers' use of the Lazzell affidavit. In the Rule 11 hearing they said that the responsibility was theirs. I see no basis for imposing monetary sanctions upon Mr. Ward. This is not a case in which the lawyers had to depend upon their client's representations in presenting their case. It was, rather, the lawyers' failure to make a reasonable inquiry which culminated in sanctionable conduct. Thus, while as the Advisory Committee notes it may be appropriate under the circumstances of a case to impose sanctions against the party rather than the attorney whose signature violates the Rule (97 F.R.D. 165, 200 (1983)), such circumstances do not exist in this case.

■ Any sanctions to be imposed upon the lawyers here should be imposed upon the law firm as a whole, and no sanctions are imposed upon Mr. Lewis individually. While Mr. Lewis signed the opposition, he did so on behalf of the law firm; the signature line reads "Birch, Horton, Bittner, Pestinger & Anderson", "By Stanley T. Lewis." The firm itself is the signatory and should be treated as such. The firm through Mr. Petumenos, the partner to whom Mr. Lewis reported, controlled the file. Where a partner controls a file and an associate makes a representation which the materials in the partner's hands make

sanctionable, the firm should bear the sanction.

■ The Advisory Committee notes that, in considering the nature and severity of the sanctions to be imposed, the court should take into account the attorney's actual or presumed knowledge at the time when the pleading or other paper was signed. 97 F.R.D. 165, 200. This court has not made a finding of willfulness or bad faith on the part of the attorneys for Ward. Therefore, no purely punitive sanctions will be imposed, but Mr. Ward's attorneys will be required to reimburse United Services Fund for a reasonable portion of those attorney's fees and costs which were reasonably incurred as a result of the use of the repudiated affidavit in Ward's Opposition to the motion for extension of the writ of attachment.

Upon evidence submitted by United Services Fund, this court finds that its attorney's fees and costs amount to $12,896.00, plus $1,625.00 Canadian, itemized as follows:

Attorneys' fees

| | | |
|---|---|---|
| Lynch, Crosby & Sisson | $7,152.00 | |
| Goodwin, Procter & Hoar | $5,744.00 | |
| Dana H. Prince (Freeman & Company) | $1,500.00 | Canadian |
| | $12,896.00 | |
| | 1,500.00 | Canadian |

Costs

| | | |
|---|---|---|
| Dana H. Prince (Freeman & Company) | $ 125.00 | Canadian |
| TOTAL | $12,896.00 | |
| | $ 1,625.00 | Canadian |

Some portion of these amounts probably would have been incurred without the sanctionable conduct, but I would estimate that at least two thirds would not have been incurred.

The firm of Birch, Horton, Bittner, Pestinger and Anderson must pay part of this amount to United Services Fund.

■ Rule 11 says that the court "shall" impose a sanction, that the sanction shall be "appropriate," and that it "may" include expenses and attorney's fees. The words "may" and "appropriate" confer discretion upon the court to award an amount other than the full reasonable fees and expenses.

■ A vigorous, zealous and independent bar is an essential element of the American system of justice. Too draconian a sanction may chill advocacy more than deterrence of Rule 11 violations requires. Full rather than partial shifting of fees makes the sanction depend too much on the style of advocacy and billing practices of opposing counsel. Rule 11 is a sanction provision to compel appropriate advocacy, not a simple fee shifting rule. Simple fee shifting may be particularly inappropriate when the lawyer, rather than the party who was to benefit from the conduct, must pay the sanction.

Accordingly, in the circumstances of this case, a sanction substantially less than full fee shifting is appropriate. In light of the above considerations and the particularities of this case, including the absence of a finding of subjective bad faith, and the fact that the sanction falls on the lawyers rather than the client whom this conduct was intended to benefit, I find that an appropriate amount of the sanction is $5,000.00.

IT IS ORDERED THAT:

1. United Services Fund's motion for Rule 11 sanctions is granted.

2. The law firm of Birch, Horton, Bittner, Pestinger and Anderson is ordered to pay within 30 days costs and attorney's fees in the amount of $5,000.00 to United Services Fund. The law firm shall within 35 days file certification in this court that it has made the required payments.