**COMMUNITY ELECTRIC SERVICE OF LOS ANGELES, INC.,**
Plaintiff–Appellant–Cross–Appellee,

v.

**NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, INC., et al.,** Defendants–Appellees–Cross–Appellants.

**Nos. 87–6280, 88–5616 and 88–5663.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1988.

Decided March 6, 1989.

As Amended on Denial of Rehearing and Rehearing En Banc April 27, 1989.

As Amended May 10, 1989.

Pamela Victorine (argued) and Alan G. Martin, Greimes, Martin, Stein & Richland, Beverly Hills, Cal., and John P. McNicholas, Morgan, Wenzel & McNicholas, Los Angeles, Cal., for appellant-cross-appellee Community Elec. Service of Los Angeles, Inc., and for cross-appellee Morgan, Wenzel & McNicholas, John P. McNicholas, Thomas H. Cadden and David T. McCann.

Gary L. Lieber (argued), John A. McGuinn, Karen A. Broe, Porter, Wright, Morris & Arthur, Washington, D.C., for appellee-cross-appellant, Nat. Elec. Contractors Ass'n, Inc.

Jack R. White (argued), Hill, Farrer & Burrill, Los Angeles, Cal., for appellee-cross-appellant Southern California, IBEW–NECA Pension Trust Fund, Southern Sierras Chapter, NECA, John Gomes, individually and Industrial Elec., Inc., and Dennis Thorson, individually and Thorson Elec., Inc.

D. William Heine and Robert M. Dohrmann, Schwartz, Steinsapir, Dohrmann & Sommers, Los Angeles, Cal., and Richard M. Resnick, Sherman, Dunn, Cohen, Leifer & Counts, P.C., Washington, D.C., for appellee-cross-appellant Intern. Broth. of Elec. Workers, AFL–CIO.

Elizabeth R. Lishner, Pappy & Davis, Los Angeles, Cal., for appellee-cross-appellant, IBEW Local Union 11.

Ray Van Der Nat, Los Angeles, Cal., for appellee-cross-appellant, IBEW Local Union 440.

Dennis A. O'Mahoney, Los Angeles, Cal., for appellee-cross-appellant Los Angeles County Chapter, NECA.

Before WRIGHT, NORRIS and WIGGINS, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This case involves the consolidation of three appeals from an antitrust suit with nine defendants. We must determine whether Community Electric Service, Inc. had the capacity to sue in federal court and whether its pleadings warrant Rule 11 sanctions.

FACTS

Community Electric, an electrical contracting company operating in Los Angeles County, bid successfully on a Palm Springs contract in an effort to expand its business geographically. It signed a letter of assent binding it to a collective bargaining agreement between the International Brotherhood of Electrical Workers (IBEW) Local 440 and Southern Sierras National Electrical Contractor's Association, Inc. (NECA).

The IBEW Local 440—Southern Sierras NECA agreement (termed "the Inside Wireman's Agreement") has a provision effectively imposing a $35 per day travel/subsistence payment on non-local contractors for each employee on a job. It applies to jobs begun before the contractor has maintained a permanent place of business within the jurisdiction for 90 days.

Community Electric contends vigorously that this provision has the purpose and effect of excluding non-local contractors. It claims that the provision sets prices and makes it impossible for non-local contractors to compete on equal footing with local contractors.

Community Electric attempted dispute resolution under the terms of the agreement. A labor management committee ruled against it unanimously.

These provisions were also the subject of proceedings before the National Labor Relations Board. It held the subsistence payments a mandatory subject of bargaining and enforceable, but declined to address the antitrust implications.

Community Electric asserts that its challenges resulted in retaliatory action. Besides claiming harassment from Southern Sierras NECA and Local 440, Community Electric alleges additional harassment from their Los Angeles counterparts. It contends that Los Angeles NECA and Local 11, as well as the IBEW–NECA pension trust fund, enforced several rules discriminatorily.

On January 13, 1986, Community Electric filed a complaint alleging violations of the Sherman Act, the Racketeer Influenced and Corrupt Organizations Act (RICO), and related California state law claims. It named as defendants the Southern Sierras and Los Angeles County Chapters of the NECA, their parent body, National NECA, Locals 11 and 440 of the IBEW, their parent body, International IBEW, two owners of electrical contracting firms from Palm Springs, John Gomes and Dennis Thorsen, and the Southern California IBEW–NECA Pension Trust Fund.

On July 1, 1983, before the filing, the California Franchise Tax Board had suspended Community Electric's corporate powers, rights, and privileges. The defendants in their answer alleged Community Electric's lack of capacity to sue.

On May 28, 1987, the California Secretary of State's Office informed the defendants that Community Electric's corporate powers, rights, and privileges were suspended. The defendants notified Community Electric and on June 8 filed a request for a status conference. That day, the California Tax Franchise Board issued a certificate of revivor reinstating Community Electric's corporate powers for the purpose of pursuing this litigation.

On August 6, 1987, the court dismissed the case, holding that Community Electric lacked the capacity to file a complaint in January 1986 due to the July 1983 suspension. It also determined that the reinstatement was ineffective to validate the January filing. The antitrust statute of limitation expired May 6, 1987, four years after

Community Electric ceased doing business. The June 8 reinstatement occurred too late.

After the dismissal, the defendants moved for Rule 11 sanctions. The court denied them, concluding that neither the complaint nor Community Electric's subsequent documents violated Rule 11's "Frivolousness Clause."

Community Electric appeals the grant of summary judgment and defendants appeal the denial of their Rule 11 motion.

## DISCUSSION

### I. *Time Barring of Community Electric's Claims*

#### A. *Capacity to File Suit*

■ Federal Rule of Civil Procedure 17(b) provides that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." Community Electric filed before the antitrust statute of limitation (15 U.S.C. § 15b (1982)) expired. The court held it had no capacity to sue under California law, the law of the state where it incorporated. Community Electric argues that federal antitrust law should prevail because of the federal interest involved.

We hold that Rule 17(b) prevails over antitrust law and requires us to apply California law. In *Levin Metals Corp. v. Parr–Richmond Terminal Co.*, 817 F.2d 1448, 1451 (9th Cir.1987), we rejected the argument that the Comprehensive Environmental Response Compensation Liability Act of 1980 (CERCLA) prevails over 17(b). The plaintiffs sued a corporation for claims arising after its dissolution. *Id.* at 1449. As the plaintiffs in that case, Community Electric cites no authority in support of its position and other courts have held to the contrary. *See id.* at 1451.

We follow the other circuits that apply state law even when it requires dismissing an antitrust suit. *See Moore v. Matthew's Book Co.*, 597 F.2d 645, 646–47 (8th Cir. 1979); *R.V. McGinnis Theatres v. Video Indep. Theatres, Inc.*, 386 F.2d 592, 593–95 (10th Cir.1967), *cert. denied*, 390 U.S. 1014, 88 S.Ct. 1265, 20 L.Ed.2d 163 (1968). This follows since corporations are creatures of state law. *Cf. Cort v. Ash*, 422 U.S. 66, 84, 95 S.Ct. 2080, 2091, 45 L.Ed.2d 26 (1975) ("Corporations are creatures of state law").

The facts of *R.V. McGinnis Theatres* parallel this case. 386 F.2d at 593–94. McGinnis sued for alleged antitrust violations. Oklahoma had revoked McGinnis' charter for failing to pay its corporate franchise tax. McGinnis relied on a later reinstatement.

The Tenth Circuit affirmed the lower court decision to dismiss. *Id.* at 594–95. The relevant statute permitted reinstatement only where payment of the tax occurs within a year of suspension and McGinnis had paid after the year expired. *Id.*

Applying California law, Community Electric had no capacity to sue in January 1986. Section 23301 of the California Revenue and Tax Code provides that the Franchise Tax Board may suspend the rights, powers and privileges of a corporation for nonpayment of taxes.

A delinquent California corporation may neither bring suit nor defend a legal action. *E.g., Reed v. Norman*, 48 Cal.2d 338, 309 P.2d 809, 812 (1957). We have repeatedly acknowledged this as the law of California. *See United States v. 2.61 Acres of Land, More or Less*, 791 F.2d 666, 668 (9th Cir. 1985) (reversing refusal to grant continuance in order to enable corporation to revive itself); *cf. In re Christian & Porter Aluminum Co.*, 584 F.2d 326, 331–32 (9th Cir.1978) (appeal by 14 suspended California corporations dismissed). Because the Franchise Tax Board suspended Community Electric, it had no capacity to sue.

#### B. *Retroactive Effect of Corporate Revival*

■ The antitrust statute of limitation expired May 6, 1987. The Board reinstated Community Electric on June 8, 1987. Community Electric argues that this reinstatement gave it the capacity retroactively for the January filing.

We apply California law to determine whether Community Electric may obtain retroactively the capacity to sue. The California statutory scheme provides for suspension under § 23301 and revival under

§ 23305 or § 23305b. Community Electric was revived without paying its taxes under § 23305b. Section 23305a, which applies to revival under either §§ 23305 or 23305b, states: "[u]pon the issuance of such certificate by the Franchise Tax Board the taxpayer therein named shall become reinstated but *such reinstatement shall be without prejudice to any action, defense or right which has accrued by reason of the original suspension or forfeiture.*" (emphasis supplied).

No California Supreme Court decision has addressed the situation where the revivor issues after the statute of limitation has expired. Every California court facing this question has held that corporate reinstatement will not validate retroactively the earlier filing. These decisions conclude that the expiration of a statute of limitation qualifies as a "defense" that "has accrued."

Since we must apply California law and have no Supreme Court decision, we look to the decisions of the intermediate state courts of appeal. *See, e.g., Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 735 (9th Cir.1986) (applying California law to breach of contract claims). We follow the decision of a state court of appeal unless convincing evidence exists that the state supreme court would decide the issue differently. *Id.*

The court below specifically relied on *Welco Constr., Inc. v. Modulux, Inc.,* 47 Cal.App.3d 69, 120 Cal.Rptr. 572, 573, *hearing denied* (1975). Welco had filed a complaint after suspension of its corporate status. Modulux answered, but did not challenge Welco's standing to prosecute until the day of trial. Welco obtained a certificate of revivor on that day. The trial court permitted Modulux to amend its answer to plead the statutes of limitations and granted a judgment of nonsuit.

The court of appeal affirmed, applying the language of § 23305a. *Id.,* 120 Cal. Rptr. at 574–75. It concluded that prior California decisions distinguish a plea in abatement from a defense. Facts warranting a plea in abatement must exist at the time of the plea and corporate revivor will validate retroactively the acts abated. In contrast, a statute of limitations is a defense and the revivor will not validate a prior filing of suit. *Id.*

Recently another California court of appeal reaffirmed the holding in *Welco* and the California Supreme Court denied review, as it had for *Welco. See ABA Recovery Serv., Inc. v. Konold,* 198 Cal. App.3d 720, 244 Cal.Rptr. 27, 30 (1988). Although *ABA Recovery* involved a separate statute of limitation, the court applied the *Welco* analysis and reached the same result. *See id.; accord Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.,* 122 Cal.App.3d 834, 176 Cal.Rptr. 239, 245 (1981) (revival of a corporation cannot prejudice a statute of limitations defense that accrues during suspension of its powers).

Community Electric says that *Welco* does not represent California law or does not apply to this suit. First, it argues that corporate revival validates retroactively all prior acts undertaken during periods of suspension, even after accrual of a defense. Second, it argues that *Welco* treats a statute of limitation as a meritorious defense incorrectly.

Community Electric provides no persuasive reason for treating the antitrust statute of limitation differently than those involved in *Welco* and *ABA Recovery.* Both cases dealt with the argument that corporate revival validates retroactively all prior acts undertaken during periods of suspension. Both rejected the argument, relying on *Traub Co. v. Coffee Break Serv., Inc.,* 66 Cal.2d 368, 57 Cal.Rptr. 846, 848, 425 P.2d 790, 792 (1967). The court in *Traub* allowed a revivor to validate a judgment obtained during suspension, but distinguished *Cleveland v. Gore Bros., Inc.,* 14 Cal.App.2d 681, 58 P.2d 931 (1936), as "present[ing] a statute of limitations problem." 57 Cal.Rptr. at 848, 425 P.2d at 792.

Community Electric cites no authority that convinces us that the California Supreme Court has changed its position since *Traub.* This seems true where, as here, the Court had a recent opportunity to ad-

dress the issue but avoided it. *See Tenneco West, Inc. v. Marathon Oil Co.*, 756 F.2d 769, 771 (9th Cir.), *cert. denied*, 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 111 (1985) (intermediate appellate state court decision not to be disregarded, particularly where the highest court has refused to review).

We also disagree that *Welco* treats a statute of limitation as a meritorious defense incorrectly. Three court of appeal decisions have squarely held otherwise. *See ABA Recovery*, 244 Cal.Rptr. at 30; *Welco*, 120 Cal.Rptr. at 575; *Cleveland*, 58 P.2d at 932. *Welco* concluded that statutes of limitation are vital to the welfare of society, favored by the law, viewed as statutes of repose and as such constitute meritorious defenses. 120 Cal.Rptr. at 575 (quoting *Scheas v. Robertson*, 38 Cal.2d 119, 238 P.2d 982, 986 (1951)). If California determines that the expiration of the statute bars a delinquent corporation's claim, we may not modify that conclusion.

### C. *Equitable Tolling During NLRB Proceedings*

■ Local 440 brought proceedings before the NLRB to establish the subsistence payments as a mandatory subject of bargaining. Involved were the same provisions challenged by Community Electric.

It asks us to extend the equitable tolling of *Mt. Hood Stages, Inc. v. Greyhound Corp.*, 616 F.2d 394 (9th Cir.), *cert. denied*, 449 U.S. 831, 101 S.Ct. 99, 66 L.Ed.2d 36 (1980), to this case. It argues that the NLRB proceedings tolled the antitrust statute of limitation because they may affect the applicability of the nonstatutory labor exemption from the antitrust laws.

We decline to make that extension. The equitable tolling of *Mt. Hood* rested on considerations of federal policy and primary jurisdiction not present here. *See id.* at 403. Mt. Hood, a bus company, asked the Interstate Commerce Commission to modify its approval on acquisitions by Greyhound, a competitor. *Id.* at 395. Mt. Hood later filed an antitrust suit against Greyhound. Greyhound would have argued that the acquisitions were immune

had Mt. Hood sued before the ICC made the modification requested. *See Mt. Hood Stages, Inc. v. Greyhound Corp.*, 555 F.2d 687, 688 (9th Cir.1977), *vacated*, 437 U.S. 322, 98 S.Ct. 2370, 57 L.Ed.2d 239 (1978).

We decided that the doctrine of primary jurisdiction provides the "relevant federal procedural law to guide the decision to toll the limitations period." 616 F.2d at 403. This follows because the court could issue no injunction and award no damages until the ICC exercised its primary jurisdiction. *Id.*

Here, the NLRB proceedings did not toll the limitations period since prior resort to the Board was not a prerequisite to review in federal court. *See, e.g., Nichols v. Hughes*, 721 F.2d 657, 660 (9th Cir.1983) (period tolled if resort to administrative body is prerequisite to court's review). When considering the nonstatutory labor exemption, courts make the determination independently. *See, e.g., California Dump Truck Owners Ass'n, Inc. v. Associated Gen. Contractors of Am., Inc.*, 562 F.2d 607, 614 (9th Cir.1977).

### D. *Due Process Claim*

■ Community Electric argues that the suspension of its corporate powers without actual notice resulted in a taking of its property without due process. It raised the question below in two lines of a lengthy brief without argument or citation to authority. Since the court never ruled on it and we have no developed record to review, we decline to address the question. We have discretion to determine what questions to consider and resolve for the first time on appeal. *See Singleton v. Wulff*, 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877–78, 49 L.Ed.2d 826 (1976); *Quinn v. Robinson*, 783 F.2d 776, 814–15 (9th Cir.), *cert. denied*, 479 U.S. 882, 107 S.Ct. 271, 93 L.Ed.2d 247 (1986).

## II. *The Rule 11 Motion*

### A. *Standard of Review*

■ The defendants challenge the court's denial of its Rule 11 motion. This court reviews *de novo* the legal conclusion

whether specific conduct violated Rule 11. *E.g., Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir.1986). It reviews any factual determinations by the court under a clearly erroneous standard. *Id.*

### B. *Timing of the Rule 11 Motion*

 Community Electric's counsel argues that summary judgment applying the statute of limitation makes the Rule 11 motion untimely. In substance, he argues that the motion forces us to address the merits.

We may address the denial of sanctions without looking too deeply into the merits of the case. *See Lemos v. Fencl*, 828 F.2d 616, 618 (9th Cir.1987) ("It is not necessary for us to resolve the underlying legal issue in order to review the sanction award because even a petition that is correctly dismissed on its merits will not necessarily warrant sanctions.").

Community Electric's counsel also contends, somewhat inconsistently, that the defendants filed a late motion for sanctions. He asserts that they should have made the request after each allegedly frivolous pleading or before judgment.

The timeliness of the Rule 11 motion rests within the judge's discretion. *See* Advisory Committee Note of 1983 to Amended Rule 11 ("The time when sanctions are to be imposed rests in the discretion of the trial judge."). The optimum timing of sanctions to further the deterrence aspect of Rule 11 depends on the circumstances. *In re Yagman*, 796 F.2d 1165, 1184 (9th Cir.1986), *cert. denied,* — U.S. ——, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987). This requires discretion.

Other circuits have approached the timeliness question differently. Several have analogized the request for Rule 11 sanctions with requests for attorneys fees or costs. *See Muthig v. Brant Point Nantucket, Inc.*, 838 F.2d 600, 604 (1st Cir. 1988) (referring to local rule on attorneys fees); *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1079–80 (7th Cir. 1987) (local rule on costs and attorneys

fees), *cert. dismissed,* — U.S. ——, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988).

The Third Circuit employs a more demanding approach that we decline to adopt. *See Mary Anne Pensiero, Inc. v. Lingle*, 847 F.2d 90, 99–100 (3d Cir.1988) (motion required prior to entry of judgment). Although we agree with that court's concerns regarding early notification and the efficient use of judicial resources, *see Yagman*, 796 F.2d at 1184 (early notification of sanctionable behavior desirable), we believe these matters rest properly within the sound discretion of the trial judge.

The court below did not abuse its discretion. The defendants filed within 30 days of the entry of judgment, the time required to request attorneys fees. *See* C.D.Cal. Ct.R. 16.10.

### C. *Rule 11 Objective Standards*

The defendants contend that Community Electric filed several frivolous pleadings in violation of Fed.R.Civ.P. 11. The Rule states:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the *pleading, motion,* or *other paper*, that to the best of the signer's knowledge, information and belief formed after reasonable inquiry *it* is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law ... (emphasis supplied).

This language requires us to evaluate the pleading or paper filed as a whole. *See Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir.1986) ("Rule 11 sanctions shall be assessed if *the paper* filed in district court and signed by an attorney ... is frivolous, legally unreasonable, or without factual foundation....") (emphasis supplied).

This court held recently that it would not impose sanctions even where a complaint contains false allegations. *Murphy v. Business Cards Tomorrow, Inc.*, 854 F.2d 1202, 1205 (9th Cir.1988). Citing *Golden Eagle Distrib. Corp.*, 801 F.2d at 1540, we stated that Rule 11 permits sanctions only

where the pleading as a whole is frivolous. 854 F.2d at 1205. *Accord Burull v. First Nat'l Bank*, 831 F.2d 788, 789–90 (8th Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988) (several groundless claims did not make the pleading frivolous as a whole); *In re Ruben*, 825 F.2d 977, 987 (6th Cir.1987) (same under 42 U.S.C. § 1988), *cert. denied,* —— U.S. ——, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988).

We appeared to limit the "frivolous as a whole" standard in *Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1163 (9th Cir. 1987). Hudson, an unemployed woman over 50, sued her former employer and others in an action alleging wrongful discharge and sex discrimination. *See id.* at 1157, 1162–63. The employer, Moore Business Forms, Inc., filed an answer and counterclaim that alleged tortious conduct by Hudson in connection with her discharge, and requested $200,000 in compensatory damages, and $4 million in punitive damages, costs and attorney's fees. *Id.* at 1157. We said that nothing in Rule 11 prevents "an independent analysis of the prayer for relief to determine whether it is frivolous and brought for an improper purpose." *Id.* at 1163. *Hudson* does not control because its holding rested on the improper purpose of the employer and the harassing nature of the counterclaim. *See id.* We make a different examination when a party complains that a litigant interposed a pleading for an improper purpose. An entire pleading has a harassing or improper purpose if the litigant included one of the claims or allegations with that purpose. This explains the independent analysis of the prayer for relief. *See id.* Here, the defendants do not allege improper purpose.

■■■ We apply an objective standard when evaluating the pleading as a whole. We evaluate also the attorney's conduct at the time of signing. *See, e.g., Cunningham v. County of Los Angeles*, 859 F.2d 705, 714 (9th Cir.1988). Rule 11 requires such examination into the facts and applicable law warranted under the circumstances of the case. *Zaldivar*, 780 F.2d at 831. A court must impose sanctions if competent counsel could not form a reasonable belief that the pleading or other paper is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. *Golden Eagle*, 801 F.2d at 1537. It follows that sanctions are inappropriate where reasonable and competent attorneys could disagree over the existence of a good faith argument.

### D. *Community Electric's Pleadings*

The defendants challenge three papers filed by Community Electric's counsel: (1) the complaint, (2) the opposition to summary judgment, and (3) the response to defendants' statement of uncontroverted facts.

#### 1. *The Complaint and Opposition to Summary Judgment*

##### a. *Sherman Act Section 1 Claim* [1]

■■■ Community Electric claims that the provisions of the Inside Wiremans' Agreement violate section 1 of the Sherman Act. If reasonable and competent attorneys could disagree over the existence of a good faith argument, sanctions are inappropriate. *See Golden Eagle*, 801 F.2d at 1537.

Competent attorneys could make a good faith argument that the agreement constituted a *per se* violation of section 1. The Supreme Court has held certain economic practices so clearly anticompetitive that they are illegal *per se. See, e.g., Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). Price-fixing is such a practice. *Id.* The Court has said:

[A] combination formed for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity in interstate or foreign commerce is illegal per se.

*United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 223, 60 S.Ct. 811, 844, 84 L.Ed. 1129 (1940).

There could be a good faith argument that the collective bargaining agreement had the purpose and effect of stabilizing

---

**1.** Since we conclude that the antitrust claims in Community Electric's complaint and its opposition to summary judgment were not frivolous, we need not address the other less significant claims contained in these documents. These pleadings as a whole were not frivolous.

prices. In *National Elec. Contractors Ass'n v. National Constructors Ass'n*, 678 F.2d 492, 501 (4th Cir.1982), *cert. dismissed*, 463 U.S. 1233, 104 S.Ct. 26, 77 L.Ed.2d 1449 (1983), the IBEW and NECA agreed to include a provision in all IBEW construction contracts requiring the employer to contribute 1% of his gross labor payroll to the National Electrical Industry Fund. The court affirmed summary judgment finding price fixing because the provision interfered with market forces that set the price of such contracts and robbed non-NECA contractors of a competitive advantage. *Id.; compare T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 634–35 (9th Cir.1987) (affirming summary judgment for defendants in suit involving similar provision due to insufficient evidence of conspiracy and injury to competition).

The travel/subsistence provision interferes with market forces and may stabilize the price that electrical contractors in Palm Springs charge. It permits local contractors to charge more for their contracts without the provision, knowing that non-local contractors must pay a higher rate to employees for the same services and will not successfully underprice them.

The defendants claim also that Community Electric's counsel had no objective basis to believe that the agreement injured competition. Such injury is an element of a section 1 violation under the rule of reason. *See Los Angeles Memorial Coliseum Comm'n v. National Football League*, 726 F.2d 1381, 1391 (9th Cir.), *cert. denied*, 469 U.S. 990, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984). Community Electric's counsel provided the affidavit of a labor economist, showing a good faith belief formed after reasonable inquiry as Rule 11 requires.

The defendants also assert that collateral estoppel after the NLRB proceeding made Community Electric's antitrust claim frivolous. They rely on the Administrative Law Judge's finding that the union (and the associated labor management committee) acted in good faith.

■■■ A finding of good faith in executing an agreement does not foreclose the possibility of an anticompetitive purpose.

The inquiry regarding improper purpose is confined to a consideration of the impact of the agreement on competitive conditions. *National Soc'y of Professional Engineers v. United States*, 435 U.S. 679, 690, 98 S.Ct. 1355, 1364, 55 L.Ed.2d 637 (1978).

The defendants contend finally that Community Electric's counsel had no good faith argument that the provisions do not fall within the nonstatutory labor exemption to the antitrust laws. This exemption prevents the antitrust laws from frustrating the goal of labor law, to permit employees to organize for the improvement of wages and working conditions. *E.g., Richards v. Neilsen Freight Lines*, 810 F.2d 898, 905 (9th Cir.1987). The defendants rely on the fact that the agreement concerns employee wages.

■■■ A union imposed restraint will fall outside the exemption if it produces significant anticompetitive effects. *Id.; see Consolidated Express, Inc. v. New York Shipping Ass'n, Inc.*, 602 F.2d 494, 521 (3d Cir.1979) (requiring that agreement restrain trade no more than necessary to advance a legitimate labor goal), *vacated on other grounds*, 448 U.S. 902, 100 S.Ct. 3040, 65 L.Ed.2d 1131 (1980).

A competent attorney could argue in good faith that the agreement restrained trade more than necessary. For at least three months, a non-local contractor must pay its employees the maximum travel amount, $35 per day. This maximum continues to apply to those jobs begun during the initial three months. The defendants failed to provide a satisfactory business or labor justification for it, although we gave them several opportunities to do so at oral argument.

### b. *Frivolous Parties*

The defendants argue that because Local 440 and Southern Sierras NECA were the only parties to the agreement, Community Electric's counsel joined other parties improperly.

■■■ Joining in a contract, combination or conspiracy violating section 1 does not require signing the agreement. Concerted action is enough. *See Granddad Bread*,

*Inc. v. Continental Baking Co.*, 612 F.2d 1105, 1111–12 (9th Cir.1979) (element of prima facie case), *cert. denied*, 449 U.S. 1076, 101 S.Ct. 854, 66 L.Ed.2d 798 (1981).

Although this circuit evaluates the pleading as a whole, we have considered imposing sanctions for improperly naming a party in a suit. *See Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir.1987) (denying sanctions for joining The Gap as a co-defendant). To warrant sanctions, joining the party must be baseless or lacking in plausibility. *Id.*

Community Electric sued seven parties other than Local 440 and Southern Sierras NECA. John Gomes and Dennis Thorsen were included. They served on the labor management committee that heard disputes over the travel/subsistence provision. The committee decided unanimously against Community Electric, enforcing the terms of the agreement. This constituted direct evidence of participation in a contract, combination or conspiracy. *See Oltz v. St. Peter's Community Hosp.*, 861 F.2d 1440, 1451 (9th Cir.1988).

Community Electric also joined National NECA and International IBEW. The defendants argue that opposing summary judgment as to these parties was frivolous even if naming them in the complaint was not.

Although Community Electric's opposition to summary judgment presents a close question, the absence of a genuine issue of fact is not dispositive. *See Zaldivar*, 780 F.2d at 830. In *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1467 (9th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 699, 98 L.Ed.2d 650 (1988), several businesses sued a ceramic tile manufacturer under RICO for assuring them that it would continue in business. Plaintiffs alleged that it had decided to close much earlier. This court affirmed the grant of summary judgment in favor of the defendant, but reversed the award of sanctions against plaintiffs' attorney for bringing suit. *Id.* at 1472.

We concluded that Franciscan's sudden closing was circumstantial evidence of a possible undisclosed plan to close early. *Id.* The action was not baseless or lacking in plausibility even though the defendants failed to adduce enough evidence to create a genuine issue of fact. *Id.*

We applied the same standard in *Rachel*, 831 F.2d at 1508. The plaintiff joined The Gap as a co-defendant liable for the acts of its wholly-owned subsidiary, Banana Republic. Again, the plaintiff failed to produce sufficient evidence to raise a genuine issue of fact. The defendants' letter to the plaintiff on stationery from The Gap was crucial to the determination that sanctions were not warranted. *Id.*

Applying the standard of these cases, the court denied sanctions properly. Community Electric had evidence that representatives of both National NECA and International IBEW were directly involved in responding to its challenge to the agreement. It also had evidence that NECA reviewed and approved the agreement. Even assuming the absence of a genuine issue of fact, the possibility of NECA's and IBEW's participation in the conspiracy was not so baseless or lacking in plausibility to warrant sanctions.

The defendants assert finally that joining the IBEW–NECA Pension Trust Fund, the Los Angeles NECA, and Local 11 was frivolous because those entities merely pursued their legal rights against Community Electric. It responds that these parties enforced rules against it discriminatorily because of its objections to the agreement. Since Community Electric did not mention these parties in its opposition to summary judgment, we consider only whether including them in the complaint warranted sanctions.

The relative timing of the actions against Community Electric provided enough circumstantial evidence to justify denying sanctions. *See California Architectural Bldg. Prod., Inc.*, 818 F.2d at 1472. Community Electric offered evidence that the pension trust fund threatened liens and related labor problems if it continued to work in Palm Springs. During the dispute over the provisions, Local 11 removed its men from job sites in Los Angeles ostensibly for Community Electric's failure to

make its monthly contributions and reports. Similar delays had occurred in the past without this response. Finally, Los Angeles NECA failed to represent Community Electric's interests at labor management meetings and participated in decisions harassing Community Electric.

This evidence at least gave Community Electric an arguable claim. *See, e.g., Los Angeles Memorial Coliseum Comm'n*, 726 F.2d at 1391 (requiring (1) an agreement (2) through which the parties intend to harm or restrain competition (3) that actually injures competition); *cf. Eliason Corp. v. National Sanitation Found.*, 614 F.2d 126, 129 (6th Cir.) (requiring evidence of discrimination or arbitrary exclusion), *cert. denied*, 449 U.S. 826, 101 S.Ct. 89, 66 L.Ed. 2d 29 (1980).

 The antitrust aspects of this case also affect our determination. We acknowledge the lenient evidentiary requirements for proving a conspiracy violating antitrust laws. Federal courts grant wide latitude in concluding conspiracy or collusion from parallel conduct and the inferences drawn from the circumstances. *See Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S. 752, 764, 104 S.Ct. 1464, 1470, 79 L.Ed.2d 775 (1984) (fact finder may infer agreement from evidence that tends to exclude the possibility that entities acted independently). We grant summary judgment less frequently in the antitrust context, in part because the alleged conspirators control the proof. *See Calnetics Corp. v. Volkswagen of Am., Inc.*, 532 F.2d 674, 683 (9th Cir.), *cert. denied*, 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976). This less demanding standard should also apply under Rule 11 to evaluate the associated documents.

#### 2. *Response to the Statement of Uncontroverted Facts*

This paper addressed only factual questions. We review the court's denial of sanctions under a clearly erroneous standard. *Golden Eagle*, 801 F.2d at 1538. We find no evidence (and the defendants have indicated none) leaving us with a definite and firm conviction that the court committed a mistake. *See, e.g., Dollar Rent A Car of Washington, Inc. v. Travelers Indemnity Co.*, 774 F.2d 1371, 1374 (9th Cir. 1985).

CONCLUSION

The district court properly granted summary judgment in favor of the defendants and denied their motion for Rule 11 sanctions.

AFFIRMED.

WIGGINS, Judge, concurring:

I concur in part I of the opinion and in the judgment affirming the district court. I write separately because I detect in part II of the majority opinion a tolerance of single, post-judgment motions for sanctions that accumulate all manner of perceived misdeeds occurring during the course of the litigation. Although a rigid rule prohibiting such motions in all cases may be inappropriate, we owe a duty to the bar to tilt the district courts away from such action. The majority opinion, in my view, does not do so.

The complaint by Community Electric was filed on January 13, 1986. It alleged violations of the Sherman Act, the Racketeer Influence and Corrupt Organizations Act and several related California state law claims. The complaint was proper in form and content and no challenge was then made to it by the defendants.

The powers, rights and privileges of the plaintiff, Community Electric, had been suspended by the California Secretary of State before the filing of this lawsuit. The defendants asserted that Community Electric lacked the capacity to sue. Community Electric thereupon acted to restore its capacity, shortly before trial but after the statute of limitations had expired under California law. This sequence of events poses the issue discussed in part I of the opinion.

Nothing in defendant's arguments suggest that the plaintiff acted improperly in filing its claim and thereafter reviving its corporate powers to overcome the consequence of an earlier failure to pay corporate taxes. That we conclude that the ac-

tions of Community Electric did not save it from the defense of the statute of limitations is of no special consequence to the motion for sanctions. There is always a loser in contested litigation.

In sum, the district court concluded that the plaintiff's claim was barred by the statute of limitations and it granted defendant's motion for summary judgment. Within 30 days thereafter, defendant moved for sanctions against the plaintiff. That motion was denied.

Under the circumstances herein set forth, I believe the district court should be affirmed because the motion for sanctions comes too late to serve its intended purpose. Accordingly, it is unnecessary to discuss at length the propriety of the court's ruling on the merits of the request for sanctions.

We considered the issue presented here —the propriety of a single post-judgment request for sanctions for various alleged acts of misconduct occurring during the pretrial and trial period—in *Matter of Yagman*, 796 F.2d 1165 (9th Cir.1986). We concluded there that such a request "flies in the face of the primary purpose of sanctions, which is to deter subsequent abuse." 796 F.2d at 1183. Deterrence, we held, is furthered by punishing the offender at the time of the transgression. *Id.*

We did not hold in *Yagman* that the preference for avoiding a post-judgment lump sum claim for sanctions is an inflexible rule. But in those cases in which such a claim may be appropriate, we held that an early notice to the offending attorney that a continuation of misconduct may result in a sanction is the desired procedure. *Id.* at 1184 ("... if the purposes of the rules are to be served, the sanctionable behavior should be brought to the immediate attention of the offending attorney.")

The majority opinion makes reference to *Matter of Yagman*. It concludes that *Yagman* holds that the timing of a sanctioned motion is committed to the sound discretion of the district court. Majority Opinion, p.

1242. The majority does not read *Yagman* as I do. I believe it stated a strong preference for an earlier filing of a motion for sanction than occurred here.

I believe we are doing a disservice to the bench and to the bar in approving the procedure followed in this case. We should simply affirm the denial of sanctions because it appears that the motion was not timely filed.