**QUAKER STATE CORPORATION,**
Plaintiff,

v.

**Edward E. LEAVITT, Regina Leavitt,
and McGrail Associates, Inc.,**
Defendants.

Civ. A. No. 90–40111–GN.

United States District Court,
D. Massachusetts.

Dec. 9, 1993.

David P. Grossi, Bowditch & Dewey, Worcester, MA, for Quaker State Corp.

Arthur Goldstein, Goldstein & Goldstein, John H. Goewey, Keenan, Goewey & Garland, Worcester, MA, for Edward E. Leavitt, Regina Leavitt and McGrail Associates, Inc.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Pending before this Court is the April 1, 1993 motion of plaintiff, Quaker State Corporation ("Quaker") for partial summary judgment on the counterclaim of defendants, Regina Leavitt, Edward E. Leavitt and McGrail Associates, Inc. ("defendants"). Defendants filed: 1) an opposition to the motion on May 17, 1993, 2) an amended opposition on May 21, 1993, and 3) an additional combined affidavit and opposition on July 30, 1993. Plaintiff replied to the additional opposition on August 31, 1993, and defendants filed an additional response on September 8, 1993.

## I. *Factual Background*

This is a civil action in which plaintiff alleges that defendant, McGrail Associates, Inc. ("McGrail") breached a supply agreement which was guaranteed by defendants, Regina and Edward E. Leavitt. Plaintiff is a corporation engaged in the business of selling motor oil and other automotive related products throughout the United States. Defendant McGrail is engaged in the business of providing quick automotive oil changes to consumers and operates a business known as "Grease Monkey".

On June 22, 1989, Quaker and McGrail entered into a Fast Lube Supply Agreement ("the Supply Agreement"). Quaker alleges that the Supply Agreement requires McGrail, for a period of ten years, to purchase 85% of its total requirements of motor oils and grease from Quaker and to feature only Quaker State motor oil for resale at McGrail's facility in Worcester, Massachusetts. Defendants Regina and Edward E. Leavitt guaranteed in writing McGrail's obligations and responsibilities under the Supply Agreement. Quaker alleges that McGrail breached the Supply Agreement by refusing to do business with the distributor responsible for its territory and by purchasing a competitor's oil instead of Quaker oil. Quaker also alleges that defendants Regina and Edward Leavitt are responsible for McGrail's obligations to Quaker.

Furthermore, relying on a guarantee executed by Quaker on behalf of the defendants, Flagship bank and Trust Company provided defendants with a mortgage loan to purchase the land and construct the facility for the franchise. Quaker alleges that it executed its guarantee based upon McGrail's representation that it would comply with the Supply Agreement, which it allegedly did not.

Defendants asserted a counterclaim against Quaker alleging, in Counts I, II, IV and V, that Quaker violated state and federal

antitrust laws by virtue of its equipment loan program pursuant to which qualified customers could apply for loans only from specified distributors responsible for their respective territories. Defendants aver that this program constitutes an unlawful restraint of trade in violation of the Sherman Antitrust Act, 15 U.S.C. § 1 and the Massachusetts Antitrust Act, M.G.L. c. 93, §§ 1–14A.

Before entering into the agreements with defendants, Quaker represented to them that to take advantage of Quaker programs, such as the equipment loan program, monies offered thereunder would come directly from Quaker. Quaker asserts that it informed defendants that to qualify for such programs, they would have to go through Quaker's designated distributor. Defendants allege, however, that Quaker never indicated that defendants were limited to doing business with or qualifying for loans from a particular Quaker distributor.

Defendants chose not to do business with F.L. Roberts & Co., Inc., the Quaker distributor responsible for defendant's territory, on the grounds that Roberts was a competitor. Quaker did not alter its policy to allow defendants to obtain a loan from any of its other distributors. Defendants claim that because of Quaker's restrictive policy, they were obliged to borrow funds elsewhere, at a higher cost, in order to finance and operate their Grease Monkey franchise. Moreover, they allege that Quaker's refusal to grant them equipment and development loans weakened their credibility and business relationship with the Flagship Bank and Trust Company.

## II. *Legal Analysis and Reasoning*

■ Summary judgment is permissible when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Inferences are drawn in the case at bar in favor of defendants, the non-moving party. *Space Master International, Inc. v. City of Worcester*, 940 F.2d 16 (1st Cir.1991); *Herbert W. Price v. General Motors Corporation*, 931 F.2d 162 (1st Cir. 1991) (record reviewed in light most favorable to non-moving party).

■ In determining whether a factual dispute is genuine, this Court must decide whether "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *accord Aponte–Santiago v. Lopez–Rivera*, 957 F.2d 40, 41 (1st Cir.1992) (citing *Anderson*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A fact is "material" if it might affect the outcome of the suit under governing substantive law. *Beck v. Somerset Technologies*, 882 F.2d 993 (5th Cir.1989) (citing *Anderson*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *see generally, Manarite v. City of Springfield*, 957 F.2d 953, 955 (1st Cir.), *cert. den.*, —— U.S. ——, 113 S.Ct. 113, 121 L.Ed.2d 70 (1992).

In the context of an antitrust claim, summary judgment has been approved and even encouraged by the Supreme Court in cases in which the essential antitrust elements such as conspiracy, market power and the restraint of trade itself are lacking. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Business Elec. Corp. v. Sharp Elec. Corp.*, 485 U.S. 717, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984). Where, as in the case at bar, the non-moving party will bear the burden of proof at trial,

> Rule 56(e) ... requires the nonmoving party to go beyond the pleadings and her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Winter Hill Frozen Foods and Services, Inc. v. Haagen–Dazs Company, Inc.*, 691 F.Supp. 539, 542 (D.Mass.1988).

■ Defendants in the case at bar have failed to present sufficient or compelling evidence of any genuine issue of material fact with respect to their antitrust counterclaim which would necessitate a denial of the summary judgment motion. Reviewing the facts

in a light most favorable to the defendants, this Court finds that, even accepting defendants' allegation that plaintiff imposed territorial restraints on its distributors or that there was an agreement between plaintiff and its distributors to allocate territories or customers, such a restraint does not rise to the level of an unlawful restraint of trade. Territorial restraints have been presumptively legal since the 1977 Supreme Court decision in *Continental T.V. v. GTE Sylvania, Inc.*, 433 U.S. 36, 58–59, 97 S.Ct. 2549, 2961– 62, 53 L.Ed.2d 568 (1977). *See e.g., Morrison v. Murray Biscuit Co.*, 797 F.2d 1430, 1435 (7th Cir.1986); *Mendelovitz v. Adolph Coors Co.*, 693 F.2d 570, 575–76 (5th Cir. 1982); *Winter Hill Frozen Foods and Services, Inc. v. Haagen–Dazs Company, Inc.*, 691 F.Supp. 539, 545–48 (D.Mass.1988).[1]

Section 1 of the Sherman Antitrust Act provides that:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared illegal.

15 U.S.C. § 1 (1982). Restraint of trade can be either "horizontal" or "vertical". As the United States Court of Appeals for the Fifth Circuit explained:

> horizontal combinations are cartels or agreements among competitors which restrain competition among enterprises at the same level of distribution.... Vertical restraints are imposed by persons or firms further up the chain of distribution of a specific product (or in the rare cases, further down the chain) than the enterprise restrained.

*Muenster Butane, Inc. v. Stewart Co.*, 651 F.2d 292, 295 (5th Cir.1981) (citations omitted). Horizontal restraints of trade are *per se* illegal, *United States v. Topco Associates, Inc.*, 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972), while vertical restraints are generally tested under the "rule of reason". *Continental T.V.*, 433 U.S. at 49, 58–59, 97 S.Ct. at 2557, 2561–62.

This Court does not agree with defendants' characterization of the alleged restraint as horizontal. Defendants have failed to present any evidence, nor even an allegation, that plaintiff's policy is the product of an unlawful conspiracy among distributors, which is required for a showing of horizontal restraint of trade. It is well-settled that unilateral actions do not rise to the level of a violation of Section 1 of the Sherman Act. *United States v. Colgate & Co.*, 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919); *Monsanto*, 465 U.S. at 761, 104 S.Ct. at 1469; *United States v. Parke Davis & Co.*, 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); *Winter Hill*, 691 F.Supp., at 543; *Remco Dist. Inc. v. Oreck Corp.*, 814 F.Supp. 171, 175 (D.Mass.1992). Defendants merely allege that the allocation of territory was "horizontal", but fail to present any evidence that plaintiff conspired with its competition or acted at the request of conspiring distributors. What is, in fact, at issue is a vertical restraint which is analyzed by this Court accordingly.

Under the applicable rule of reason, "the fact-finder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Winter Hill*, 691 F.Supp. at 545, *citing, Continental T.V.*, 433 U.S. at 49, 97 S.Ct. at 2557 (footnote omitted); *see also, Chicago Bd. of Trade v. United States*, 246 U.S. 231, 238, 38 S.Ct. 242, 244, 62 L.Ed. 683 (1918) (explanation of the rule of reason). In the case of an alleged vertical, non-price restraint, as in the case at bar, the courts grant a manufacturer/supplier a certain leeway as long as the restrictions do not have anticompetitive effects. *Winter Hill, supra*, at 545–46; *Monahan's Marine Inc. v. Boston Whaler Inc.*, 866 F.2d 525, 528 (1st Cir.1989).

As the District Court for the District of Massachusetts has previously recognized: [t]he Supreme Court in *Continental T.V.* explained that, although vertical restrictions reduce intrabrand competition by limiting the number of sellers of a particular product, "[v]ertical restrictions promote

---

**1.** The analysis under M.G.L. c. 93, § 4, the Massachusetts Antitrust Act, is the same as that under the comparable federal act. M.G.L. c. 93, § 1; *Winter Hill*, 691 F.Supp. at 543 n. 5.

interbrand competition by allowing the manufacturer [or supplier] to achieve certain efficiencies in the distribution of his products." 433 U.S. at 54, 97 S.Ct. at 2559.... [I]t must be stressed that the antitrust laws were not established for the protection of a particular competitor, rather for the protection of competition. *Winter Hill,* 691 F.Supp. at 546, *citing, Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). Under the rule of reason, the antitrust claims asserted by defendants cannot survive plaintiff's motion for partial summary judgment.

■ To prove the existence of an unreasonable, vertical, non-price restraint on trade, defendants must establish 1) an agreement among two or more persons or business entities, 2) which is intended to harm or unreasonably restrain competition, and 3) which actually causes injury to competition. *See Murphy v. Business Cards Tomorrow, Inc.,* 854 F.2d 1202, 1205 (9th Cir.1988) (overruled on separate and unrelated grounds in *Townsend v. Holman Consult. Corp.,* 914 F.2d 1136 (9th Cir.1990)). Even assuming that defendants could establish the first part of the test, they failed to allege, much less prove, any anti-competitive effect of plaintiff's restrictions.

■ Some circuits have ruled that the threshold inquiry in cases of vertical, non-price restraints is whether the moving party has market power. *See, e.g., Assam Drug Co. v. Miller Brewing Co.,* 798 F.2d 311, 315–16 (8th Cir.1986); *Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 666 (7th Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987); *Muenster,* 651 F.2d at 298 (5th Cir.1982); *see also, Winter Hill,* 691 F.Supp. at 547. Market power can be inferred from the control of a "substantial percentage of the sales in a market carefully defined in terms of both product and geography." *Valley Liquors, supra* at 666, *quoting Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 678 F.2d 742, 745 (7th Cir. 1982). Defendants presented no evidence that plaintiff's restriction had any impact on the relevant market nor any anti-competitive effect.

Plaintiff's policy limited defendants to doing business with only the distributor responsible for defendants' geographical territory. Although this policy may have had a limiting effect on defendants' business opportunities, a reasonable jury could not find that the policy is an anti-competitive, non-price restraint in violation of the applicable antitrust provisions.

## ORDER

For the foregoing reasons, plaintiff's motion for partial summary judgment in its favor on Counts I, II, IV and V of the counterclaim of defendants, McGrail Associates, Inc., Regina Leavitt and Edward E. Leavitt is **ALLOWED.**

So ordered.